John J. BUKOSKEY, trustee et al., Plaintiffs,

v.

WALTER W. SHUHAM, CPA, P.C. et al., Defendants.

WALTER W. SHUHAM, CPA, P.C. et al., third party Plaintiffs,

v.

Mary E. SMITH et al., third party Defendants.

No. A83–587 CIV.

United States District Court, D. Alaska.

Aug. 6, 1987.

R. Everett Harris, Jensen, Harris & Roth, Anchorage, Alaska, Margaret Louise Barbier & Dexter A. Washburn, Schweppe, Krug & Tausend, Seattle, Wash., for plaintiffs.

John A. Treptow, Atkinson, Conway & Gagnon, Anchorage, Alaska, for defendants Shuham.

Burton C. Biss, Biss & Holmes, Wasilla, Alaska, for defendants Indus. Indem. & Hardcastle.

Olof K. Hellen, Hellen, Partnow & Condon, Anchorage, Alaska, for defendant Continental Ins.

John Clough, III, Faulkner, Banfield, Doogan & Holmes, Juneau, Alaska, for defendant Alaska Federal S & L Assoc.

Judith Bazeley, Banson, Bazeley & Chisolm, Anchorage, Alaska, Bruce McKenzie, Donaldson & Kiel, P.S., Seattle, Wash., for third-party defendant Donaldson & Kiel.

Timothy Lynch, Lynch, Crosby, Molenda & Sisson, Anchorage, Alaska, Michael A. Patterson, Lee, Smart, Cook, Martin & Patterson, Seattle, Wash., for third-party defendant trustees.

## DECISION AND
## ORDER—SUMMARY JUDGMENT

KLEINFELD, District Judge.

The trustee for two union trust funds sued the trusts' accounting firm, its bonding company and others, for losses allegedly caused by embezzlement by an employee of the accounting firm. The accountant, Shuham, filed a third party complaint against the trustees of the trust funds and others for contribution. Shuham has since settled with the plaintiffs, so nothing remains of the case except for Shuham's contribution claims against the third party defendants.

Among the third party defendants are Donaldson & Kiel. They were the law firm retained by the trustees to draw up the trust instruments and provide legal advice. The accountant argues that the lawyers should have known that the trustees were not complying with certain ERISA duties, and should have advised the trustees to do so. The accountant pleaded two theories, breach of a statutory ERISA fiduciary duty, and breach of a common law fiduciary duty as attorneys. His memoranda argue a third theory, breach of an attorney's duty to exercise reasonable care in advising a client.

The lawyers, Donaldson & Kiel, moved to dismiss for failure to state a claim. Both they and the accountant, Shuham, have relied upon extensive material outside the pleadings, so the motion is treated pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as a motion for summary judgment.

■ Shuham, in an affidavit attached to his opposition to Donaldson & Kiel's motion rather than as a separate motion, requested a Rule 56(f) continuance to do discovery if the motion to dismiss were treated as a summary judgment motion. This request is denied as moot, because Shuham has since that time had adequate time for discovery. Discovery has now closed. Shuham has been permitted to supplement the record with additional factual materials.

At oral argument, Shuham conceded that Donaldson & Kiel was not an ERISA fiduciary, so the Third Claim for Relief dropped out of the case. What remains of the third party complaint is Shuham's theory that Donaldson & Kiel "owed certain fiduciary duties to the trusts," and that their "failure to warn, advise, and/or correct" the trustees' noncompliance with ERISA "constitutes a breach of Donaldson & Kiel's common law fiduciary duties."

Both sides have argued on the assumption, apparently well founded, that Alaska law applies to this issue. Alaska has largely displaced common law contribution and indemnity with a statute, the Alaska Uniform Contribution Among Tortfeasors Act. *Arctic Structures, Inc. v. Wedmore*, 605 P.2d 426 (Alaska 1979); *Vertecs Corp. v. Reichhold Chems. Inc.*, 661 P.2d 619 (Alaska 1983). The statute, however, states, "[T]his chapter does not apply to breaches of trust or of other fiduciary obligation." AS 09.16.010(g). Whether this means that contribution is not available for such claims, or only that common law rather than statutory remedies remain in effect, would be a critical question if this motion were treated as one for dismissal. Since the motion is treated as one for summary judgment, however, and the materials and arguments disclose a claim distinguishable from breach of fiduciary duty, this statutory exception is not conclusive. Shuham

argues that Donaldson & Kiel committed professional malpractice, a tort, and would doubtless plead that more clearly if the third party complaint were dismissed with leave to amend.

Shuham's theory for professional malpractice against Donaldson & Kiel is that if Donaldson & Kiel had properly advised the trustees of their legal duty to obtain an independent audit, then Shuham's employee Shapansky would not have embezzled the $276,728. (Shuham supp. opp. filed 9/26/86 pp. 3–5)

Donaldson & Kiel prepared trust documents for many accounts. They provided the documents by themselves, or else came to the board meetings and explained them in detail, as the clients chose. Most clients preferred not to spend the money for the explanations, although as a matter of marketing, Mr. Kiel made a practice of advising that such explanation would be helpful. (Kiel depo 98–99) The trusts in issue did not hire Donaldson & Kiel to perform the expanded service in 1976, when the trusts were drawn up. When they had a problem, the trustees would call Mr. Kiel. (Kiel depo 127) The law firm billed out $1,200 for preparing the documents; attendance at meetings, including fees, travel, and expenses, would ordinarily cost around $500 to $1,000. (Kiel depo p. 134, ex. 20) Mr. Kiel says in his affidavit filed July 11, 1985 that he was never asked to assure that the trustees followed ERISA and the trust agreement. This is not contradicted by other evidence.

The Trust Agreement says that the "Trustees shall engage ... an independent qualified public accountant and shall authorize such accountant to conduct an annual financial examination of the Trust Fund...." (Kiel depo. ex. 3, p. 21; ex. 4, p. 21) Shuham argues that the trustees misunderstood this to mean that Shuham himself could be the independent auditor, so did not comply with the provision, but would have complied, and would have discovered the embezzlements sooner, if Donaldson & Kiel had properly advised them.

The minutes of the trustees' meetings are substantially uncontroverted. On May 20, 1978, a motion was made for an independent audit even though Donaldson & Kiel had not been brought to the board meeting. The motion failed on a 5–2 vote. (ex. 1, p. 2, supp. opp.)

At a meeting July 29–30, 1979, a motion to hire an independent auditor "was withdrawn until Larry Cotter can obtain some cost figures and until Duane Kiel can look into some of the legalities concerning possible conflict of interests between the Administrative Agent [Shapansky] and Walter W. Shuham C.P.A. (PC)." (Kiel depo ex. 7) Mr. Kiel's uncontradicted testimony regarding this entry is that he raised this issue, and told the board "my gut reaction is you are auditing yourself, and that is not—and Shuham should not be auditing himself. He should get somebody else to do it." (Kiel depo 116–117) He "must have said" that he would confirm this immediate reaction back in his office. (*Id.* at 117) After confirming the correctness of his opinion, he communicated it again to his primary contact on the board. (*Id.* at 119)

On December 1 and 2, 1979, Mr. Kiel attended a meeting and recommended an audit by a firm other than the Shuham firm. The president of the board agreed to accept the recommendation, without a vote. (*Id.* at p. 18, Kiel depo ex. 8, 9) Mr. Kiel put this to the board "stronger than a recommendation. Ordering it, if you want to use that word." *Id.* at 130 Apparently this independent audit was not done, despite the attorney's advice to do it and the president's agreement to have it done.

On December 6, 1980, Mr. Kiel again recommended an independent audit. (*Id.* at p. 28) A motion to have the administrator hire an independent accountant to audit the funds carried. (Dec. 6, 7 minutes)

Shapansky may have embezzled some money prior to 1979, but any amount was never quantified because the auditors determined that in 1978 "it did not appear that there had been a significant amount" and the costs of auditing prior years would be too high. (Evans depo 59) The trustees therefore decided not to follow up on possible losses prior to 1979. (*Id.* at 60)

As of January 13, 1983, the trustees were still not prepared to fire Shapansky, (ex. 1, p. 46) In March of 1983, Mr. Hirstel called Mr. Kiel and told him that Shapansky's "wife or girlfriend, I don't know if they were married, called him and said something like, Buck [Shapansky] has taken off and he has stolen some money, or something like that." (Kiel depo 163) The trustees then discovered that when the supposedly independent audit was finally agreed to by the board, Shapansky had forged the independent auditor's signature, and not had it done at all. (Kiel depo 164, references in Donaldson & Kiel memo filed 1/12/87)

Walter Dawson, who joined the board in 1980, testified that at the end of 1980 Mr. Kiel told the board that Shuham could act as the independent auditor. (Dawson depo 146–147) This testimony would create a genuine issue of material fact, except that Mr. Dawson retracts it later in the deposition. (152–154) The retraction, together with the contradiction between Mr. Dawson's initial testimony and the minutes, prevents the initial testimony from being "significantly probative." *Anderson, infra.* Mr. Edwin Johnson testified that Donaldson & Kiel recommended an outside auditor, not the Shuham firm, so despite Shuham's reliance upon it, the Johnson testimony does not support his position. (Johnson depo. 100)

Shuham also argues that Donaldson & Kiel should have advised the trustees to hold two meetings per year, because the trust agreement required two meetings. No evidence is submitted to show that the trustees did not understand the plain language of the trust agreement, that such advice would have been followed, or that it would have made any difference in whether Shapansky embezzled the money.

Shuham also argues that the trust agreement should have required the bond to be at least ten percent of the funds handled in so many words, instead of by incorporating by reference the ERISA statutory section so requiring. Again, no deposition testimony or even affidavit is submitted to show that the trustees did not understand the trust agreement, or that such a requirement would have been followed. Since the trustees ignored other plain language requirements in the trusts, it cannot be assumed without evidence that they would have heeded this one. Lawyers commonly incorporate statutory provisions by reference in order to avoid imposing on their clients the need to revise all documents every time a statute is amended. Shuham submitted no expert's affidavit or other evidence that this drafting technique failed to meet the appropriate standard of care.

■ In these factual circumstances, the claim for breach of fiduciary duty is a red herring. Shuham has no facts or arguments to show that Donaldson & Kiel breached their duty of loyalty and fidelity, or committed any sort of fraud. Mallen & Levit, Legal Malpractice (2d ed.) § 121. Shuham's claim is for breach of Donaldson & Kiel's duty to exercise reasonable care, not breach of fiduciary duty. The exception in the contribution statute is therefore irrelevant. This court must determine whether a genuine issue of fact has been established by evidence competent under Rule 56 as to whether Donaldson & Kiel was negligent and thereby caused the loss.

■ The elements of a cause of action for professional negligence in Alaska are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.

*Linck v. Barokas & Martin,* 667 P.2d 171, 173 n. 4 (Alaska 1983).

In the federal system, summary judgment is not a "disfavored procedural shortcut." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). This court is required to enter summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Id.* at 2552–2553 Summary judgment is not defeated by *any* factual dispute; the issue must be genuine and material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The trial judge must not weigh evidence and determine the truth of the matter, but "merely colorable" or "not significantly probative" evidence cannot prevent summary judgment. *Id.* at 2511 The test is similar to the test for a directed verdict. *Id.* at 2512

I can find no genuine issue regarding elements 2, 3 and 4 of the cause of action. The evidence put before the court shows that the plain English words in the document said that an independent audit was required, yet the trustees did not heed it. The trustees did not hire the law firm or agree to pay the substantial fees and expenses required for general advisory services at all meetings. When two trustees sought an independent audit in 1979, their motion was defeated. Mr. Kiel recommended an independent audit in July of 1979, yet the motion by a board member to follow the advice was withdrawn.

When Mr. Kiel again recommended an independent audit in December 1979, the president said he would have it done, yet it was not done. Mr. Kiel recommended an independent audit again a year later, the board decided to have it done. Shapansky then forged the independent auditor's signature so that the audit appeared to have been done but was not.

Taking these facts and the inferences therefrom most favorably to Shuham, where is the breach of duty? Kiel wrote plainly in the instruments that an independent audit was required, and so advised the trustees repeatedly. Where is the proximate cause? His advice was at first not followed, and then subverted by Shapansky's forgery. Should he have insisted on going to all meetings of the board from the beginning of his service? A client should not be required to write a blank check to an attorney for fees for consultations and travel expenses, in order to hire him as a scrivener. The matter of the independent audit, while serious, was not so grave that a reasonable attorney would smash pottery on the floor of the boardroom to get the trustees' attention. *Cf.* Jeremiah 19:10–11. Should he have annoyed the president by repeated telephone calls after the December 1979 meeting to see if the president had done what he said he was going to do? That would be an odd interpretation of an attorney's duty. Should he have taken the audit done after his advice was finally followed in 1980 to a handwriting expert to see if the signature was forged? Who would pay the bill if it was not forged? Should he have forcibly seized the trusts' books in December 1979 and taken them to an independent accountant? He had no authority to do this, nor grounds then apparent upon which to seek such authority, yet short of such a seizure, the subsequent course of events tends to show that Mr. Kiel could not have prevented Mr. Shapansky's embezzlement.

The attempt to put in concrete terms what the attorney should and could have done which would have prevented the embezzlement demonstrates the absence of any evidence from which the court can infer duty, breach, and proximate cause. Mr. Kiel did not sit silently while the trustees acted incorrectly in his presence or with his knowledge; he volunteered his correct advice. Mallen & Levit, Legal Malpractice (2d ed.) § 434 He was, as a matter of law, not responsible for the trustees' initial failure to heed his advice, nor for the subversion by Shapansky of the eventual attempt by the board to act on his advice.

Donaldson & Kiel's motion to dismiss, treated as a motion for summary judgment, is granted.