Tibor BATHONY, Plaintiff,

v.

TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, Defendant.

No. J90–019 Civil.

United States District Court, D. Alaska.

April 29, 1992.

Mark Clayton Choate, Juneau, Alaska, for plaintiff.

Paul M. Hoffman, Robertson, Monagle & Eastaugh, Juneau, Alaska, for defendant.

## MEMORANDUM AND ORDER

VON DER HEYDT, District Judge.

## I. INTRODUCTION.

This cause comes before the court on motion for summary judgment, filed November 1, 1991 (Docket No. 41), by defendant Transamerica Occidental Life Insurance Company. The court heard oral argument at Juneau on April 20, 1992. The court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons stated below, defendant's motion is granted.

## II. BACKGROUND.

In 1962, plaintiff purchased a health insurance policy from defendant. The policy provides payments of $500.00 for two years in the event of a disability due to sickness.[1] The policy also provides payments until age 65 in the event of a disability due to an injury. A rider to the second portion of the policy substitutes payments until the age of 65 with payments for life in the event of an injury.[2]

In 1972 plaintiff was diagnosed with lumbar spinal arthrosis. In 1984 plaintiff began receiving epidural hypodermic injections of a spinal steroid in order to keep his disease under control. The injections relieved plaintiff's pain and extended the time for which he would need surgery. Plaintiff received a series of these injections. One of the possible complications of having the injection is a condition known as cauda equina syndrome. The condition results in either permanent paralysis, or a transient paralysis.

Dr. Norman, the anesthesiologist who administered plaintiff's injections, stated in his deposition that each time a patient received the injection he would have informed the patient of the possible complications of having an injection. Dr. Brudenell, plaintiff's treating physician, stated in his deposition that he was reasonably certain that he spoke with plaintiff concerning the complications of having such injections.

On December 13, 1985 plaintiff received an injection. This was approximately the tenth injection plaintiff received in about a year's time. Plaintiff never experienced complications from any of the previous injections. He subsequently suffered from the complication of cauda equina syndrome from the injection he received December 13, 1985. He was hospitalized on December 14, 1985 and released from the hospital on December 17, 1985.

There is evidence in the record which suggests that prior to the December 13, 1985 injection, plaintiff considered surgery to take place in the early part of 1986. Because of plaintiff's reaction to his last injection, his treating physician determined that plaintiff would receive no more injections, and that surgery would be necessary. Plaintiff underwent surgery in January, 1986. Plaintiff stated in his affidavit that the surgery was ineffective. Plaintiff was

---

1. The policy states:

    MONTHLY INCOME FOR TOTAL DISABILITY DUE TO SICKNESS: If total disability of the Insured, commencing while this policy is in force and on or before age 64 of the Insured, results from sickness, the Company will pay the monthly indemnity for total disability during the period of such disability which continues beyond the elimination period specified for sickness in the Policy Schedule, but not for any period beyond the maximum duration of monthly indemnity for total disability specified for sickness in the Policy Schedule, not for any period beyond age 65 of the Insured.

2. The policy states:

    MONTHLY INCOME FOR TOTAL DISABILITY DUE TO INJURY: If total disability of the Insured, commencing while this policy is in force, results from injury within 90 days from the date of the accident, the company will pay the monthly income for total disability during the period of such disability which continues beyond the elimination period specified for injury in the Policy Schedule.

out of work from the time of the December 13, 1985 injection until November 1, 1990.

In February, 1986 plaintiff submitted an application to the insurance company for disability payments. He received payments of $500.00 per month for a period of two years. The insurance company stopped payments because of its belief that plaintiff's condition was the result of a sickness, and not the result of an accidental bodily injury. Defendant moved for summary judgment on this issue.

## III. DISCUSSION.

### A. *Standard for Summary Judgment Motion.*

■ Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Once the moving party meets its initial burden of identifying for the court the portions of the record that it believes demonstrate the absence of any genuine issue of material fact, the responding party may not rely on the allegations in the pleadings to preclude summary judgment.[3] *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assn,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

■ Summary judgment is appropriate where the responding party has failed to produce sufficient evidence to allow a reasonable trier of fact to find in its favor on an element of the respondent's claim or defense upon which it will bear the burden of proof at trial. *Id.* Mere dispute of material fact is not by itself sufficient to preclude summary judgment—there must be "genuine factual issues that properly can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see also T.W. Electrical Service, Inc.,* 809 F.2d at 631–32.

■ Inferences may be drawn in favor of the nonmoving party only if they are rational, reasonable, and otherwise permissible in light of the governing substantive law and substantive evidentiary burden. *Liberty Lobby,* 477 U.S. at 253–54, 106 S.Ct. at 2512–13; *T.W. Electrical Service, Inc.,* 809 F.2d at 631 & n. 3. The judge's function in deciding a motion for summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine whether there is sufficient evidence favoring the non-moving party for the jury to return a verdict for that party. *Bukoskey v. Shuham,* 666 F.Supp. 181, 185 (D.Alaska 1987).

### B. *Motion for Summary Judgment.*

Defendant seeks summary judgment on the issue of whether plaintiff's condition was the result of a sickness or an accidental bodily injury. Defendant submits that a favorable summary judgment decision requires a showing by defendant that plaintiff was disabled not as a result of an accidental bodily injury. While defendant allows that there may be issues of fact as to the length of plaintiff's disability, there are no issues of fact that plaintiff's disability was not caused by accidental bodily injury.

Plaintiff maintains that issues of fact are present which preclude the grant of summary judgment. The issue to be decided, plaintiff submits, is whether, under the policy, a sixty month departure from work was the result of an accident or an illness. Plaintiff concludes that he was not expecting to be disabled as a result of the injection.

---

**3.** Pursuant to Local General Rule 5(F)(2), the party opposing the summary judgment motion "shall simultaneously serve and file with the brief in opposition a 'statement of genuine issues' setting forth clearly, concisely, completely and candidly those contested material facts which must be tried." Plaintiff failed to file such a statement. Plaintiff's counsel is directed to above rule in the event of further practice before this court.

Under Alaska law, an insurance contract may be considered a contract of adhesion. *Graham v. Rockman*, 504 P.2d 1351 (Alaska 1972). Insurance policies are to be construed to provide the coverage which a layman would reasonably expect, given a lay interpretation of the policy language. *Id*. An insurer will "be bound by its representations to the extent that they form, with the policy itself, the expectations of a reasonable policyholder." *INA Life Insurance Company v. Brundin*, 533 P.2d 236, 242 (Alaska 1975).

Whether an incident can be considered an "accident" within the terms of the policy was considered in *Brundin*. In that case, an action was brought to recover benefits under an accidental death policy. The patient had gone in for surgery for hemorrhoids and suffered cardiac arrest while in surgery. The court concluded that under the accidental death policy involved in that case which covered death through bodily injury "caused by an accident resulting directly and independently of all other causes in loss," the policy would provide coverage if the death was caused by the surgery and was unexpected or unforeseen, regardless of whether there was any mistake or misstep which occurred in the course of the operation and which was the cause of the cardiac arrest. *Id*. at 242–243.

The court conducted a review of two lines of authority which have interpreted insurance policy provisions covering accidental bodily injury or death. One line of authority focuses on the distinction between accidental results and accidental means. Another line of authority looks at the policy language in light in which an average person would understand it. *Id*. at 238–239. The court determined, that based on the law which is to give effect to the policyholder's reasonable expectation of coverage, the court would apply the view held by the latter line of authority in interpreting insurance policy provisions concerning accidental bodily injury or death.

The court further explained in *Brundin* that the policy in that case was sufficiently broad to cover accidental results or conditions, which were described by the court as instances where unintended injury or death results despite the lack of any identifiable accidental causative agent. *Id*. at 242. The court held "that the policies' language here extends coverage to results and conditions which are unexpected and unforeseen and hence 'accidental' in common usage." *Id*. at 242–243. In footnote 24 the court commented further on what would be included within the meaning of "accident." The court stated that:

> It should also be apparent that when one undertakes an activity, such as certain types of surgery, in which there is a substantial chance that death or disability may occur, such a result, if it occurs, cannot properly be called accidental. If the activity is undertaken with full knowledge of a substantial risk, the resulting death or injury is not accidental, unless a positive mistake or misstep in fact occurred. In the instant case, the death occurred during a routine hemorrhoidectomy, in which the risk is ordinarily not substantial, so the insured cannot be said to have foreseen the result.

*Id*. at 243.

In the present case, defendant relies on deposition testimony of plaintiff's doctor and anesthesiologist to argue that the decision to administer the injection was not an accidental event or means, and that the result was an accepted risk of which plaintiff was warned. Further, the decision not to administer further injections was a deliberate, conscious decision of plaintiff and his doctor, and it was not accident. Because surgery was consented to, and because there was no misstep or mistake, defendant concludes there was no accidental result of surgery.

Plaintiff submits that he was not expecting to be disabled as a result of the surgery. Plaintiff asserts that even though defendant claims plaintiff was informed and that plaintiff understood explicitly what could occur, neither plaintiff nor his doctor ever thought such a result would occur as a consequence of a routine injection. Under the reasonable expectation standard established by Alaska law, plaintiff argues that according to his reasonable

expectation, he did not expect to have an adverse reaction to the injection. Because he was disabled as a result of the adverse reaction, plaintiff submits he was forced to consent to back surgery.

The focus in the present case is not so much on the language of the policy, and whether an average person would necessarily understand accidental results to be excluded from coverage. The question is whether the actual result of the last injection received by plaintiff can be considered an accidental bodily injury, or whether it is a sickness. Under the standard established in *Brundin,* an accident includes results and conditions which are unexpected and unforeseen. Plaintiff submits that the results of the last injection were unexpected. He did not expect to suffer the transient paralysis. He did not expect to have to submit to surgery.

Plaintiff's understanding of what is included under accidental bodily injury does not correspond to the common usage of the term "accident." The *Brundin* court stated in footnote 24 that when one undertakes an activity in which there is a substantial risk and is aware of that risk and, if that result occurs, it cannot be called an accident. That is the situation presented by plaintiff's case.

Plaintiff was told that the injection could have serious complications, one of which was temporary or permanent paralysis. Plaintiff characterizes the injection as routine. While the act of presenting himself for each of the injections may have become a routine circumstance, there is nothing to indicate that after receiving several of these injections, it became a routine operation. The possibility of complications, of which plaintiff was warned, remained the same for each injection. Plaintiff's condition could have resulted from any one of the injections.

Plaintiff's reasonable belief that he suffered an accidental bodily injury is not supported by the facts of the case, nor the law. If plaintiff's interpretation were true, then any time a person with a disability policy similar to plaintiff's had medical treatment for which he was warned of a substantial risk, and that substantial risk occurred, if the person reasonably believed that he suffered an accidental bodily injury, coverage under the policy would have to follow. Such is not a proper interpretation of the law.

In the present case, there are no genuine issues of material fact. Defendant requested summary judgment on one of three alternatives. The court grants defendant's motion for summary judgment on the basis defendant was correct in its determination that plaintiff suffered a disability because of sickness, and not because of injury such that no additional payments are due under the disability policy. Because the court finds that defendant was correct in its determination, the court further grants defendant's request for summary judgment of dismissal of plaintiff's second amended complaint. A final judgment will be issue separately.

## IV. ORDER.

Accordingly, IT IS ORDERED THAT defendant's motion for summary judgment is GRANTED.