NATIONAL LIFE & ACCIDENT INSURANCE COMPANY *v.* SHIBLEY.

4-4102

Opinion delivered January 27, 1936.

*Roy Gean* and *Pryor & Pryor,* for appellant.

*Hardin & Barton,* for appellee.

SMITH, J. Appellee recovered judgment for the face of an accident insurance policy issued by the appellant insurance company upon the life of James A. Shib-

ley, her son. The policy was dated November 3, 1933, and the insured died March 8, 1934. The insured was a mechanical engineer, and had been employed as such in Cuba for several years. While there he contracted a disease called Tropical Sprue. This disease was defined by one of the doctors who testified in the case as "an inflammatory condition of the mucous membrane of the alimentary tract from the mouth all the way through, and is an intestinal infection." It is a serious ailment with a high per cent of fatalities, and the victims of it are required to live upon a restricted diet, which excludes all sweets and fats.

It is first insisted for the reversal of the judgment that the application for the insurance concealed the fact from appellant insurance company that the applicant was afflicted with this disease, and that the policy would not have been issued had that fact been disclosed. It is insisted also that the policy never became effective as a contract of insurance because it was therein stipulated that it should not be effective, unless the insured was in good health at the time of its delivery, and it is insisted that he was not in good health at that time.

The following questions and answers appear in the application: "Have you now any disease?" "No." "Are you now affected in any way by any past or present sickness or injury?" "No." "Within the past five years have you had any sickness or bodily injury?" "Yes." "If so describe below which disease or injury you have had within the last five years?" "Nov. year 1932." "Kind of disease or injury?" "Intestinal infection, duration three months." "Do you represent all of your foregoing answers are correct?" "Yes." "Do you understand that you will have no insurance until the premium for the first insurable period is paid, and the policy applied for is issued and delivered to you while in sound health and free from any bodily injury except as provided in a binding receipt?" "Yes."

It is insisted these answers constitute a warranty and were shown to be false, and that the policy was never effective because at the time of its delivery the insured was afflicted with the disease of Tropical Sprue. We

think, however, that the court properly refused to direct a verdict in the insurance company's favor on either ground for the following reasons:

The application for the insurance was taken by R. R. Cornelius, a soliciting agent for the insurer, who wrote the answers above quoted. The application was made for insurance in the sum of $4,000. Cornelius was the associate of the insured. It is certain that, after the application had been made and presented to the insurance company Cornelius called at the home of the insured, who resided with his mother. The insured was away from home engaged in his employment of assistant district engineer of the State Highway Department. Mrs. Shibley was at home, and the testimony is in irreconcilable conflict as to the conversation which then occurred between her and Cornelius.

She testified that Cornelius told her the company required more definite information about·the "intestinal infection" mentioned in her son's application. She testified that she told ·Cornelius everything she knew about her son's condition, that Dr. Krock, her son's physician, who resided in Fort Smith, said her son had Tropical Sprue, and she referred Cornelius to the doctor for more detailed information. ·Cornelius denied that he was given this information, but this question of fact was submitted under instructions which correctly declared the law applicable thereto. Two circumstances strongly corroborate the testimony of Mrs. Shibley. One of these is that the application had been amended to make the insurance applied for read $3,000 instead of $4,000. The other is that the answer appearing in the original application that the applicant had "fully recovered" was erased by line drawn through those words. Cornelius admitted that these alterations in the application had been made at the office of the insurance company after the receipt there of the application. As proof of the fact that the insured knew of his ailment, the company offered in evidence an application made in December, 1933, by the insured to another insurance company in which he described his intestinal infection as Tropical Sprue. It

appears however that that company, with this information, issued the policy applied for.

Upon the question of fraud in the issuance of the policy and its ineffectiveness as a contract of insurance because the insured was not in good health at the time of its delivery, there was testimony to the following effect: Mrs. Shibley testified that her son was in apparent good health and was regularly engaged in his employment. A physician testified that on August 15, 1933, the insured made application for employment with the Phillips Petroleum Company in Oklahoma, and that the witness examined the applicant to ascertain his physical condition. Applicant advised the witness that he had contracted Tropical Sprue in Cuba, but notwithstanding this information witness was of the opinion that the applicant's condition was good, and he was put to work for the company. Applicant later left this employment, and was employed in this State by the Highway Department.

The law applicable to these facts was declared in instructions conforming to the law as announced in the case of *American National Insurance Company v. Hale,* 172 Ark. 958, 291 S. W. 82. In that case the answers in the application were expressly warranted to be true, as they are here. The opinion in that case recites that: "The court, over the objection of the insurance company, on its own motion, instructed the jury that, if they found that the deceased was not in sound health, and that the agents of the defendant had knowledge of such fact, which knowledge they had obtained in the scope of their employment, then the defense of unsound health would not be available, and their verdict would be for the plaintiff; but, if they found that the insured was not in sound health, and the agents of the company, acting within the scope of their employment, had no knowledge of such fact, then the verdict should be in favor of the defendant." After reviewing a number of our decisions and citing a number of cases from other courts, this instruction was there declared to be a correct declaration of the law, notwithstanding the applicant's answers had been warranted to be true, and may in fact have been false.

In so holding our earlier case, *National Life Ins. Co. of U. S. A.* v. *Jackson,* 161 Ark. 597, 256 S. W. 378, was disapproved. The point decided in this last-mentioned case is reflected in the second headnote reading as follows: "Under a policy of life insurance which stipulated that no liability is assumed by the company for any accident, illness or disease occurring or contracted prior to the date thereof, no liability was incurred where insured died from tuberculosis contracted prior to the issuance of the policy, even though the company's agent who delivered the policy at the time knew that insured had tuberculosis." See also *Metropolitan Life Ins. Co.* v. *Minton,* 188 Ark. 456, 66 S. W. (2d) 627.

The jury's verdict is conclusive, therefore, of the fact that the policy was in force as a contract of insurance at the time of its delivery.

A more serious question is whether the insured's death resulted from an accidental injury within the meaning of the policy which insured "against loss of life * * * which resulted solely and without other contributing cause from external injury." Mrs. Shibley testified, on this issue, that on the night of March 8, 1934, her son was at home suffering from an injured foot. While she was cooking supper in the kitchen her son was lying on a bed in an adjoining room. The door bell rang and she passed through his room to answer the call. She had previously stumbled over her son's crutch, which was lying on the floor near his bed. She had picked up the crutch and had stood it up near the head of his bed where he could reach it. As she walked hurriedly through his room to answer the door bell, the heavy end of the crutch leaning against the side of the bed fell, striking her son on the temple. She rushed to him, picked up the crutch, and noticed a red place on his temple. She asked if he was hurt, he answered, "Not much, but it scared him to death." She further testified that her son ate his supper and soon thereafter said, "Let's turn off the lights and go to bed. I am feeling bad." She went into another room, and in a few minutes heard him breathing heavily. She called a doctor, but her son died at 8:30

that night. Dr. Krock, the attending physician filed, a certificate with the State Board of Health in which the principal cause of death was said to be "Tropical Sprue." He expressed the same opinion on the witness stand. It was this disease which produced the cerebral hemorrhage which was the immediate cause of death in his opinion. Such a blow as the insured received from the falling crutch would not have produced a hemorrhage in a normal person. But while Dr. Krock did testify that death was caused by cerebral hemorrhage he did not testify that Tropical Sprue would produce a cerebral hemorrhage. Both he and a Dr. Watson, who testified in the case, said that the disease of Tropical Sprue renders the blood vessels fragile and more easily ruptured than would be the case with a person who had not had the disease. Dr. Krock testified that he knew of nothing but the blow of the falling crutch which could have produced the cerebral hemorrhage, which both doctors testified was the immediate cause of death. Dr. Watson, in answer to a hypothetical question, said that the cause of the insured's death "was hemorrhage to the brain brought on by the blow on his head by the crutch." Both doctors testified that under proper and reasonable care for himself the insured might have lived out his normal expectancy and would at least have been expected to live for many years.

The appellee insurance company insists that the judgment should be reversed, and the cause dismissed because the testimony above recited does not show as the policy requires that the insured's death resulted "solely and without other contributing cause from accidental injury," and a number of instructions were requested which declared in effect that there could be no recovery, if the disease concurred with the accident in bringing about the insured's death.

Upon this issue the court charged the jury that "If you believe from a preponderance of the evidence that said Shibley sustained an injury by a crutch falling and striking upon his head and temple, and that said injury was the proximate cause of his death which followed shortly thereafter, then you are instructed that

the plaintiff would be entitled to recover in this case, even though you may believe that the condition of health produced by the Tropical Sprue left a condition whereby the accident would the more readily produce death."

This last instruction declares the law in effect as stated in the case of *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark. 91, 152 S. W. 995, and reaffirmed in the case of *Maloney* v. *Maryland Casualty Co.,* 113 Ark. 174, 167 S. W. 845, in each of which cases an instruction was approved as correct to the effect that the insurance company is liable on its policy of accident insurance "if death resulted when it did on account of the aggravation of the disease from the accidental injury, even though death from the disease might have resulted at a later period, regardless of the injury." See also *Missouri State Life Ins. Co.* v. *Barron,* 186 Ark. 46, 52 S. W. (2d) 733.

In the chapter on Accident Insurance, 1 C. J. 452, it is said that the tendency of the courts is to so construe similar provisions in accident insurance contracts as to hold the insurer liable where the accident is a proximate cause of the death, although some disease may have been present as a secondary cause. A number of annotated and other cases are cited in support of this text.

The case appears to have been submitted under instructions conforming to the law as declared in the cases herein cited, and as no error appears, the judgment must be affirmed, and it is so ordered.