HARTFORD LIFE INS. CO. *v.* SALLY ANN CATTERSON ET AL

5-4993                                           445 S. W. 2d 109

Opinion delivered October 6, 1969

*Williams & Gardner,* for appellant.

*Mobley, Bullock & Harris,* for appellees.

GEORGE ROSE SMITH, Justice. In 1965 the appellant issued an accident and sickness policy to the appellees' mother, Becky Wilson Catterson. On March 3, 1966, Mrs. Catterson was committed to the State Hospital for a condition diagnosed as a manic-depressive reaction. The jury may have found from the evidence that Mrs. Catterson learned the next morning that she was to be given electric shock treatments. She at once left the hospital without permission and was missing until her dead body was found nine days later in an isolated wooded area. An autopsy indicated that death resulted from exposure and occurred about three days after she disappeared.

This action was brought by the beneficiaries to re-cover the accidental death benefit of $10,000. The in-

surance company sought to avoid liability on the ground that the insured's death was not within the coverage of the policy and on the additional ground that one of the questions in the written application for the policy was answered falsely. This appeal is from a judgment for the amount of the policy, plus the statutory penalty and a $4,000 attorney's fee.

First, the insurer contends that there is no substantial evidence to support a finding that the insured's death was accidental. There were no marks on the body indicative of foul play. The temperature had varied from a low of 24 degrees on March 7—which was the indicated date of death—to a high of 75 degrees on March 12. The physician who performed the post mortem examination testified that the most likely cause of death was exposure and that he could arrive at no other logical conclusion.

The contract contained fairly typical language, covering accidental bodily injury which results directly and independently of all other causes in a loss covered by the policy. "Accidental," as we have often said, means happening by chance, taking place unexpectedly, not according to the usual course of things. *Travelers Ins. Co.* v. *Johnston,* 204 Ark. 307, 162 S. W. 2d 480 (1942).

Death from exposure to cold is not essentially unlike death from heat prostration, which we considered in *Continental Cas. Co.* v. *Bruden.* 178 Ark. 683, 11 S. W. 2d 493. 61 A. L. R. 1192 (1928). There the wording of the policy was arguably more restrictive than that now before us. requiring that the injury be effected solely by an external, violent, and purely accidental event. After reviewing the two conflicting lines of authority we adopted the view that death by sunstroke or heat prostration is accidental. There is a parallel division of authority with respect to death from freezing or exposure to cold. See *Finley* v. *Prudential Life & Cas. Ins. Co.,*

236 Ore. 235, 388 P. 2d 21, 4 A. L. R. 3d 1161 (1963), and the A. L. R. annotation. Consistently with our earlier decision we hold that Mrs. Catterson's death was permissibly found by the jury to have been accidental.

The appellant also insists that recovery in the case at bar is excluded by a clause which excepts death caused or contributed to by sickness or disease. We have often held, however, that such a clause does not preclude liability when death results from the co-operation of disease and accidental injury. *Life & Cas. Ins. Co. of Tenn.* v. *Jones,* 230 Ark. 979, 328 S. W. 2d 118 (1959); *Fidelity & Cas. Co.* v. *Meyer,* 106 Ark. 91, 152 S. W. 995, 44 L. R. A. (n. s.) 493 (1912). In fact, the beneficiaries' position in the case at hand is much stronger than that involved in many of our earlier cases, for the jury could have concluded that the insured intelligently and voluntarily left the hospital to avoid the proposed shock treatments. Hence the existence of a proximate causal connection between Mrs. Catterson's manic-depressive reaction and her death was decidedly a question for the jury.

Alternatively, the appellant asks exemption from liability because Mrs. Catterson falsely stated in the application for the policy that she had not ever been told that she had "epilepsy, dizziness, disease of brain or nervous system, or nervous breakdown." In fact, Mrs. Catterson had been confined to the State Hospital as a manic-depressive for several weeks in 1957, but after her discharge she had apparently been well until the disease again manifested itself after the issuance of the policy sued upon.

We lay aside without discussion the appellant's citation of some of our older cases, for the point at issue is now covered by the Insurance Code, which provides that misrepresentations shall not prevent a recovery unless fraudulent, or material to the acceptance of the risk or to the hazard, or of such a nature that the insurer would not have issued the policy it did issue if

the true facts had been made known to it. Ark. Stat. Ann. § 66-3208 (Repl. 1966).

We examined the new statute at length in *Old Republic Ins. Co.* v. *Alexander,* 245 Ark. 1029, 436 S. W. 2d 829 (1969), and reached this conclusion: "The burden was on [the insurer] to sustain its contentions that the facts not disclosed were material to the risk assumed by it, or that, it in good faith, would not have issued the policy " After studying the proof we decided that the chancellor had not erred in holding that the insurance company had failed to sustain its burden of showing that it would not have issued the policy if the truth had been stated in the application. By contrast, in *Life & Cas. Ins. Co. of Tenn.* v. *Smith,* 245 Ark. 934, 436 S. W. 2d 97 (1969), we denied recovery on the policy when it was proved that knowledge of the applicant's true medical history would have kept the company from issuing the policy.

In the case at bar, which was tried before either of the two opinions just cited had been published, the insurer offered no evidence to prove that the policy would not have been issued if the pertinent question in the application had been answered correctly. We may assume that a correct answer would have led the insurance company to investigate the matter, but there is no testimony showing whether or not the company would have refused to issue the policy because of the applicant's brief confinement to the State Hospital in 1957. We are forced to conclude that the appellant failed to establish its affirmative defense under the Insurance Code.

It is also argued that the $4,000 attorney's fee is excessive, but in view of the amount involved and of the appeal to this court we cannot sustain that contention.

Affirmed.