Shirley DUVALL, Administratrix of the Estate of Ricky Duvall *v.* MASSACHUSETTS INDEMNITY AND LIFE INSURANCE COMPANY

87-288                                              748 S.W.2d 650

Supreme Court of Arkansas
Opinion delivered May 9, 1988
[Rehearing denied June 6, 1988.*]

---

*Purtle, J., would grant rehearing.

*Young & Finley*, for appellant.

*Gardner, Gardner & Hardin*, by: *Richard E. Gardner, Jr.*, for appellee.

DARRELL HICKMAN, Justice. The legal question in this case is whether or not Ricky Duvall's death was accidental. He was a 26 year old pulpwood cutter. After going to work on November 5, 1983, he was found lying on the ground. He was taken to a nearby hospital where he was declared dead. It is undisputed that the cause of death was Marfan's syndrome, a congenital disease affecting the connective tissue of the body.

The appellee insurance company had an accidental death and injury policy on Duvall. The insurance company denied coverage and Duvall's wife filed suit against the policy. The insurance company filed a motion for summary judgment, and the appellant also moved for summary judgment. The trial court found no substantial factual dispute and granted the motion for summary judgment in favor of the insurance company. We agree that the death was not accidental and affirm the judgment.

■ Appellant first argues that the trial court erred in granting summary judgment because the question of accidental death is a question of fact for the jury. The argument has no merit. Appellant and appellee agreed on all of the facts surrounding the insured's death. During oral arguments to this court, appellant's counsel conceded that no additional material facts could be developed at a trial on the matter. The construction and legal effect of a written contract are to be determined by the court as a question of law except where the meaning of the language depends upon disputed extrinsic evidence. *Arkansas Rock & Gravel Co.* v. *Chris-T-Emulsion Co.*, 259 Ark. 807, 536 S.W.2d 724 (1976); *C. & A. Constr. Co.* v. *Benning Const. Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974).

There were no witnesses to Duvall's collapse; we have only the undisputed testimony of Dr. Allan Rozzell, a board certified

pathologist who performed an autopsy on Duvall. In his opinion, the strenuous work of woodcutting caused Duvall's heart rate to increase and his blood pressure to rise, which in turn caused his aorta to rupture. According to Dr. Rozzell, the cause of Duvall's death was Marfan's syndrome.

Once again we are faced with the difficult legal question of what is an "accidental" death or injury. Our experience has been similar to that of other courts, groping for a simple definition of accident, or accidental means, and deciding cases on the basis of facts. *See* Reid, *Insurance Accident Policies — "Accident or Accidental Means,"* 10 Ark. L. Rev. 226 (1955-56); Eckert, *Sickness and Accident Insurance*, 11 Ark. L. Rev. 1 (1956-57); Annotation, *Insurance: "accidental means" as distinguishable from "accident," "accidental result," "accidental death," "accidental injury," etc.*, 166 A.L.R. 469 (1947). We have held that "accident" and "accidental means" are synonymous. *Travelers Ins. Co. v. Johnston*, 204 Ark. 307, 162 S.W.2d 480 (1942).

Appleman, a leading authority on insurance law, discusses the subject at length and recognizes the difficulty courts have had in defining accident and accidental means. 1A J. Appleman & J. Appleman, *Insurance Law and Practice* § 360 (1981). First, he points out that the medical and legal definition of an accident differ:

> From the point of view of the physician, anything which occurs suddenly may be considered an accident. Therefore, if a particle in a blood stream floats and lodges in a lung or in a coronary artery, that is an accident; the development of a thrombosis in place is not. The bursting of a blood vessel in the brain is a cerebral accident, an occlusion resulting from atherosclerosis or its inadequacy from arteriosclerosis is not. None of these things constitute a legal accident unless trauma causes the clot to float or acts upon a predisposing medical condition so as to produce disability or death.

Appleman also discusses the reasons for extended litigation on this question:

> Since the ingenuity of attorneys, and the sympathies of courts, have made great strides into attempting to bring unexpected occurrence within the coverage of accident policies, insurers have resorted to stringent language to

attempt to prevent overliberal results. That is why such terms as 'external' and 'violent' have come to have a place in such contracts, and why many insurers employ a phrase such as 'accidental means'. The difficulty is that the companies have become entranced by the language they employ, extending it to situations not originally intended to be excluded, and unnecessary for the purpose of distinguishing between medical and legal causation or, in addition, to prevent fraudulent acts designed for the purpose of collecting policy benefits. With the companies reaching too far, and the courts desiring to narrow such constructions, there is a never ending contest apparent in litigation over such policies. If we bear in mind the legitimate purpose intended to be served both by the insuring agreements and the proper exceptions, the lines of demarcation can be drawn with some degree of fairness.

The appellant argues that according to our definition of accident, Duvall's death was accidental and that she should recover under the policy. The policy language in this case reads:

> The term 'injury' as used in this policy shall mean accidental bodily injuries from which loss results directly and independently of all other causes, provided such injuries are sustained by an Insured Person while this policy is in force with respect to such person.

The parties agree that this language is not ambiguous. In fact, the language in this policy is fairly typical policy language. *See Hartford Life Ins. Co.* v. *Catterson*, 247 Ark. 263, 445 S.W.2d 109 (1969). There is no doubt that we should interpret the policy by construing the words in a plain and ordinary manner. 1A J. Appleman & J. Appleman, *Insurance Law and Practice* § 360 (1981). We have adopted the generally accepted definition of the term "accident" or "accidental," which is "something happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected." *See Continental Casualty Co.* v. *Bruden*, 178 Ark. 683, 11 S.W.2d 493 (1928); *Aetna Life Ins. Co.* v. *Little*, 146 Ark. 70, 225 S.W. 298 (1920). Duvall argues that her husband's death was sudden and unexpected and the result of strenuous work and therefore accidental. Not every death that is sudden or unexpected is an accidental death, as

our cases and the authorities demonstrate. According to American Jurisprudence, the words "bodily injury" are commonly and ordinarily used to designate an injury caused by external violence, and not to indicate disease. 43 Am. Jur. 2d *Insurance* § 563 (1982).

In some cases the decision has been easy. In *Hartford Life Ins. Co.* v. *Catterson, supra*, we held that death from exposure was an accident. We compared it to death from heat prostration, which we held to be accidental in *Continental Casualty Co.* v. *Bruden, supra.*

But other cases reflect the difficulty we have had in dealing with the question. In *Fidelity & Casualty Co.* v. *Myer*, 106 Ark. 91, 152 S.W. 995 (1912), the insured was standing in a wagon when he was thrown backwards by the sudden and unexpected movement of the horse. A few days later he began hemorrhaging from the mouth and bowels, dying several weeks later. An autopsy revealed a tumerous growth on the pancreas. A jury verdict holding that Myer died of accidental means was upheld.

In *Travelers Ins. Co.* v. *Johnston, supra*, we upheld a jury finding that Johnston could recover under two accident policies. Johnston was seriously injured when he fell out of a taxicab. His left hip was broken and he became totally disabled. It was discovered that Johnston had Paget's disease, a chronic degenerative condition of the bones. In support of our decision that his injury was accidental, we said:

> So, here, we think the testimony warranted the giving of the instructions herein set out and the finding of the jury, based thereon, that appellee's fall from the cab was an accident for the consequences of which the insurer was liable; and this is true although the jury might have found that appellee's hip would not have been fractured if he had not been afflicted with Paget's disease. However, the testimony of the surgeon who attended appellee is to the effect that a fall such as appellee sustained might have broken the hip even though appellee had not been afflicted with Paget's disease.

In *Metropolitan Casualty Ins. Co.* v. *Fairchild*, 215 Ark. 416, 220 S.W.2d 803 (1949), the insured was disabled because of a heart attack. The doctor testified that it was caused by the

unusual physical stress he was under at the time it occurred. We upheld an award by the judge, sitting as a jury, for a disabling body injury sustained through external, violent and accidental means, according to the language of the policy. We did point out that it was the doctor's undisputed testimony that Fairchild did not suffer from heart disease before the accident.

In these and other decisions we have struggled with the question of whether the injury or death was caused by an accident or through accidental means. Justice Cardozo tried to set us straight on this question in his famous "Serbonian Bog" dissent in *Landress* v. *Phoenix Mutual Life Ins. Co.*, 291 U.S. 491 (1934). The insured died from sunstroke while playing golf. The policy insured against death resulting from "external, violent and accidental means." The court held that the result was accidental but the means producing it were not accidental. Dissenting, Justice Cardozo said:

> The insured did not do anything which in its ordinary consequences was fraught with danger. The allegations of the complaint show that he was playing golf in the same conditions in which he had often played before. The heat was not extraordinary; the exertion not unusual. By misadventure or accident, an external force which had hitherto been beneficent, was transformed into a force of violence, as much so as a stroke of lightning. The opinion of the court concedes that death 'from sunstroke, when resulting from voluntary exposure to the sun's rays,' is 'an accident.' Why? To be sure the death is not intentional, but that does not make it an 'accident,' as the word is commonly understood, any more than death from indigestion or pneumonia. If there was no accident in the means, there was none in the result, for the two were inseparable. No cause that reasonably can be styled an accident intervened between them. The process of causation was unbroken from exposure up to death. There was an accident throughout, or there was no accident at all.
>
> . . . .
>
> Sunstroke, though it may be a disease according to the classification of physicians, is none the less an accident in

the common speech of men.

. . . .

When a man has died in such a way that his death is spoken of as an accident, he has died because of an accident, and hence by accidental means.

. . . .

The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. 'Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an accident.' [cites omitted] On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance. It is his reading of the policy that is to be accepted as our guide, with the help of the established rule that ambiguities and uncertainties are to be resolved against the company.

In this case, there was a disease and nothing out of the ordinary that intervened to cause Duvall's death. It is undisputed that Duvall, while engaged in his regular employment, died from Marfan's syndrome, a disease; therefore, his death was not accidental under the policy. The trial court was correct in granting summary judgment in favor of the insurance company.

Affirmed.

PURTLE and DUDLEY, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. I agree with the majority that there is no factual dispute in this case. However, I differ with the result reached by the opinion. I would reverse the trial court's decision granting summary judgment to the appellee and direct the court to enter a summary judgment for the appellant.

Whether a death is accidental is ordinarily a jury question. However, the uncontradicted evidence in this case leads me to believe the trial court erred in granting the summary judgment to appellee rather than to the appellant.

I disagree with the majority interpretation of the testimony of Doctor Rozzell. The doctor first described Marfan's Syndrome, a condition which Duvall had, as an inherited condition of which Duvall was not aware. The doctor explained that persons suffering from this condition should avoid doing things which elevate their blood pressure or increase the heartbeat. The doctor stated:

> Mr. Duvall's activity was directly related to his death because that is what initiated the rapid pulse and elevated blood pressure which sets the condition in motion. . . . The result [death] was totally unexpected. I think anybody would be an idiot to be out there chopping wood if he knew that he had Marfan's Syndrome. Again, the thing which caused the death was the strenuous activity.

There is no other testimony on the cause of death.

It is somewhat a mystery to me why the majority made the decision to affirm when all of the cases cited in the majority opinion clearly require reversal. In *Continental Casualty Co.* v. *Bruden*, 178 Ark. 683, 11 S.W.2d 493 (1928), we held that death by heat prostration was an accidental death. In *Hartford Ins. Co.* v. *Catterson*, 247 Ark. 263, 445 S.W.2d 109 (1969), we held that death from exposure to cold weather was accidental. We cited *Bruden* as supporting precedent. In *Fidelity and Casualty Co.* v. *Myer*, 106 Ark. 91, 152 S.W. 995 (1912), the insured fell out of a wagon and died a few days later from a hemorrhage resulting from the rupture of a tumerous growth in the pancreas. This court upheld the jury verdict deciding that Myer died from accidental means.

A case almost on direct point with the case before us is *Travelers Ins. Co.* v. *Johnston*, 204 Ark. 307, 162 S.W.2d 480 (1942). Johnston had Paget's disease which was not discovered until he fell out of a taxicab. Paget's disease is a degenerative condition of the bones which renders them more susceptible to breakage from trauma. Johnston became disabled from his injury. The physician testified that a fall such as Johnston sustained might have broken his hip even though he was not affected by Paget's disease. We upheld the jury finding that the disability was accidental.

The final authority cited in the majority opinion is *Metropolitan Casualty Ins. Co.* v. *Fairchild*, 215 Ark. 416, 220 S.W.2d 803 (1949). Fairchild became disabled because of a heart attack. The doctor testified the attack was caused by the unusual physical stress Fairchild was under at the time of the occurrence. We upheld the trial court's finding that the heart attack which rendered Fairchild disabled was brought about through "external, violent and accidental means, according to the language of the policy."

The only basis supporting the decision of the majority is the fifty-four year old "Serbonian Bog" dissent in *Landress* v. *Phoenix Mutual Life Ins. Co.*, 131 U.S. 100 (1934). Ordinarily this court does not base its decisions upon dissents. So far as I am concerned the majority is no more persuasive than Justice Cardozo was in his dissent.

Therefore, I would reverse the trial court and direct that a judgment be entered in favor of the appellant.

ROBERT H. DUDLEY, Justice, dissenting. I dissent from that part of the majority opinion which holds that the insured's death was not accidental under the language of the insurance policy. The majority opinion is based upon the single idea that because the death was caused in part by a pre-existing disease, it could not be "accidental" under the policy. Such an approach not only oversimplifies the issue, but also is clearly wrong in light of previous cases decided by this Court.

The overwhelming majority of our cases dealing with accident insurance claims have been concerned with policy language which limited recovery to injuries brought about by "accidental *means*." The term "accidental means" is not used in the policy at issue. It is important, however, to discuss the term in its historical context in order to understand the language in the policy before us. The term "accidental means" was almost universally used in accident insurance policies during the first half of the century. Eckert, *Sickness and Accident Insurance*, 11 Ark. L. Rev. 1 (1957). Judicial construction of the term "accidental means" resulted in a clear split of authority in various jurisdictions. Some courts refused to draw a distinction between loss due to "accidental means" and loss due to "accident," holding that if the result was unusual, unforeseen, and unexpected, the requirement of

"accidental means" was satisfied, as was that of simple "accident." 1A J. Appleman & J. Appleman, *Insurance Law and Practice* § 360 (rev. ed. 1981). Other courts, however, took the approach that if the policy was written in terms of "accidental means," then it was necessary that the *acts* or *means* themselves, rather than the *result*, be "accidental," or "unexpected," "unforeseen," "not according to the usual course of events." *Id.*

The rules enunciated in our Arkansas cases appear to fall in the latter category, with attention focused on the act rather than the result. Absolute certainty in categorizing our cases is difficult because in applying the law to the facts of some cases it seems that if the result, rather than the means, was unforeseen, we still allowed recovery. *See, e.g., Union Life Ins. Co. v. Epperson,* 221 Ark. 522, 254 S.W.2d 311 (1953). *Metropolitan Casualty Ins. Co. v. Fairchild,* 215 Ark. 416, 220 S.W.2d 803 (1949).

Apparently, we were not alone having difficulty in interpreting "accidental means," and the insurance industry began to stop using the term.

> The insurance industry has recognized that the "accidental means" clause, once universally used, has several disadvantages, and, therefore, since the 1940's the trend is away from its use and toward the more liberal "accidental bodily injury" wording. According to a recent insurance publication, this trend is an attempt to build better public relations since the distinction is highly technical and not readily understood by the insuring public or even by courts. The writer parenthetically states that claims relation suffered from "accidental means" specifications, and furthermore the courts ignored the distinction anyway.

Eckert, *supra,* at 5 (footnote omitted).

Regardless of how we construed the term "accidental means" in the past, however, the language of the policy now before us does not employ that term. Rather, it uses the more liberal term "accidental bodily injuries":

INJURY DEFINED AND SCOPE OF COVERAGE

> The term "injury" as used in this policy shall mean accidental bodily injuries from which loss results directly

and independently of all other causes, provided such injuries are sustained by an Insured Person while this policy is in force with respect to such person.

Thus, this Court is first presented with the question of whether the insured's death falls within the policy language, "accidental bodily injury." In my opinion, it does. The language of an insurance contract must be construed according to the ordinary understanding and common usage of people generally. 10 G. Couch, *Cyclopedia of Insurance Law* § 41:8 (rev. ed. 1982); 43 Am. Jur. 2d *Insurance* § 559 (1982). "Generally, accident policies should be so interpreted that provisions of the policies effectuate the reasonable expectations of the purchaser. An average person buying a personal accident policy assumes that he is covered for any fortuitous and undesigned injury." 1A J. Appleman & J. Appleman, *supra*, § 360.

In applying the law to the facts now before us, the rupture of the insured's aorta was the "bodily injury." In addition, the terms "accident" and "accidental" have never acquired a technical meaning in the law. 10 G. Couch, *supra*, § 41:8; 43 Am. Jur. 2d, *supra*, § 559. Courts have almost universally construed the terms to mean something unforeseen, unexpected, fortuitous, unusual; something which does not occur in the usual course of things; an event such as would not reasonably be anticipated by a person situated as the one to whom the event occurred. *See generally* 1A J. Appleman & J. Appleman, *supra*, § 360; 10 G. Couch, *supra*, §§ 41:8-9; 43 Am. Jur. 2d, *supra*, § 559.

Our own cases, in discussing "accidental means," have defined "accidental" as happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected. *E.g., Continental Casualty Co.* v. *Bruden*, 178 Ark. 683, 11 S.W.2d 493 (1928). Further, "[i]n construing whether or not a certain result is accidental, it is customary to look at the casualty from the point of view of the insured, to see whether or not, from his point of view, it was unexpected, unusual, and unforeseen." 1A J. Appleman & J. Appleman, *supra*, § 360. Under these circumstances, the rupture of the aorta, caused by the physical exertion of the job, and the resulting death were completely unexpected and unforeseen by the insured. Therefore, his death falls clearly within the policy language, "accidental

bodily injury."

The next question confronting this Court under the language in this policy is whether the "loss result[ed] directly and independently of all other causes." Again, I have no difficulty in finding that it did. However, the majority opinion, in reaching its result, completely ignores a long line of Arkansas precedent.

It is unquestioned that an insurer has the right to limit or restrict the coverage of its policy. It is also true, however, that an insurer is charged with the knowledge of how certain language has been judicially construed within the jurisdiction where the policy is issued. *See Clay County Cotton Co.* v. *Home Life Ins. Co.*, 113 F.2d 856 (1940); 1A J. Appleman & J. Appleman, *supra*, § 360. Arkansas has a rather long line of cases, dating back to 1912, in which we have consistently held that

> [w]hen an accident insurance policy limits liability to "bodily injuries sustained through accidental means resulting directly, independently and exclusively of all other causes of death," and it *appears that death resulted from an aggravation of a latent disease to which the deceased was subject*, an instruction is correct to the effect that the defendant insurance company is liable, under the contract, *if death resulted when it did on account of the aggravation of the disease from the accidental injury, even though death from the disease might have resulted at a later period, regardless of the injury.*

*Union Life Ins. Co.* v. *Epperson*, 221 Ark. at 525, 254 S.W.2d at 313 (emphasis added). "In other words, if death would not have occurred when it did but for the injury resulting from the accident, it was the direct, independent and exclusive cause of death at that time, even though the death was hastened by the diseased condition." *Fidelity & Casualty Co.* v. *Meyer*, 106 Ark. 91, 96, 152 S.W. 995, 997 (1912); *see also Metropolitan Casualty Ins. Co.* v. *Fairchild*, 215 Ark. 416, 220 S.W.2d 803 (1949); *National Life & Accident Ins. Co.* v. *Shibley*, 192 Ark. 53, 90 S.W.2d 766 (1936). Dr. Rozzell testified in his deposition that the strenuous activity of the insured's job was directly related to his death because it initiated the rapid pulse and the elevated blood pressure, setting in motion the rupture of the aorta. Clearly, the insured's death resulted when it did on account of the

aggravation of a latent disease to which he was subject.

In summary, our case law on the policy language before us is in favor of the insured and against the insurance company. Yet, the majority rules in favor of the insurance company and against the insured. Such a ruling is doubly unfair. Obviously, it does not follow our precedent, and more importantly, it rewrites an insurance policy in favor of the insurance company which originally wrote the policy. I dissent.