# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-1031

———————

James M. Kolb, Jr., M.D.,         *

                           *

        Appellee,         *

                           *   Appeal from the United States

     vs.              *   District Court for the

                           *   Eastern District of Arkansas.

The Paul Revere Life Insurance   *

Company,                *

                           *

        Appellant.      *

———————

Submitted: September 8, 2003

Filed: January 28, 2004

———————

Before WOLLMAN, BOWMAN, and RILEY, Circuit Judges.

———————

RILEY, Circuit Judge.

      This case involves the interpretation of the phrase "accidental bodily injury" contained in two disability insurance policies issued by The Paul Revere Life Insurance Company (Paul Revere) in the State of Arkansas. Dr. James M. Kolb, Jr. (Dr. Kolb), an orthopedic surgeon, underwent two elective surgeries on his right eye, after which he sustained known, albeit rare, complications following the second surgery, resulting in substantial loss of vision and rendering Dr. Kolb totally disabled. Paul Revere paid Dr. Kolb total disability benefits to age 65, but thereafter terminated benefits, contending Dr. Kolb's total disability resulted from "sickness," for which

benefits are payable to age 65, as opposed to total disability resulting from "injury," for which benefits are payable for life. Dr. Kolb filed a declaratory judgment action against Paul Revere. The district court[1] ruled the complications following surgery, resulting in Dr. Kolb's total disability, constituted "accidental bodily injury" rather than "sickness" under the facts and the plain language of the two disability policies. We agree and affirm.

## I.    BACKGROUND

Paul Revere issued Dr. Kolb two disability income policies (policies) that provided Paul Revere would pay Dr. Kolb monthly sums for the remainder of his life in the event he sustained a total disability caused by an "injury," defined as "accidental bodily injury" sustained after the policy issue date and while the policy is in force. Alternatively, both policies provided Paul Revere would pay Dr. Kolb monthly sums to age 65 if he sustained total disability caused by "sickness," defined as "sickness or disease which first manifests itself" after the policy issue date and while the policy is in force.

On May 25, 1995, Dr. Kolb underwent two elective surgeries performed by different surgeons on his right eye.[2] The following morning, Dr. Kolb suffered substantial loss of vision in his right eye due to complications from hemorrhaging. No medical negligence is alleged, and, as we discuss in detail below, neither surgeon could identify the cause or causes of the complications. Thereafter, Dr. Kolb could no longer perform the material and substantial duties of an orthopedic surgeon and ceased practicing medicine. Dr. Kolb applied for total disability benefits, and Paul

---

[1]The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

[2]The first surgical procedure was an aborted repositioning of a lens implant over the pupil, and the second procedure was a *pars plana* vitrectomy.

Revere paid benefits until Dr. Kolb reached age 65. Thereafter, Paul Revere discontinued benefits.

Dr. Kolb brought a declaratory judgment action against Paul Revere, claiming Paul Revere breached the policies by not construing his total disability as resulting from an "injury" and by not awarding him lifetime benefits. Because no factual disputes exist and the case involves purely a legal question of contract interpretation, the parties stipulated to a joint statement of facts, with related deposition excerpts, and each submitted a memorandum of law.

In granting judgment in favor of Dr. Kolb, the district court discussed Duvall v. Massachusetts Indemnity and Life Insurance Company, 748 S.W.2d 650 (Ark. 1988), the most recent Arkansas Supreme Court case involving an action to recover benefits under an accidental death and injury policy. Relying on Duvall, the district court anticipated the Arkansas Supreme Court would not adopt the distinction between accidental means and accidental results. Based on the Arkansas Supreme Court's quotation and application of Justice Cardozo's dissenting remarks in Landress v. Phoenix Mutual Life Insurance Co., 291 U.S. 491, 498-501 (1934),[3] the

_____

[3]Dissenting, Justice Cardozo wrote:

The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. "Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an accident." On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance. It is his reading of the policy that is to be accepted as our guide, with the help of the established rule that ambiguities and uncertainties are to be resolved against the company.

Id. at 499 (citations omitted); see Duvall, 748 S.W.2d at 653.

-3-

district court concluded the majority in Duvall signaled its rejection of the accidental means–accidental results distinction. Duvall, 748 S.W.2d at 653. The district court construed the prevailing rule in Arkansas to be that the policies at issue should be interpreted "by construing the words in a plain and ordinary manner." Id. at 652. Applying the terms "injury" and "sickness" to the facts of the case, the district court determined "the complications from Kolb's surgery were accidental bodily injury," based on undisputed testimony that Dr. Kolb's loss of vision in his right eye was neither intended nor expected, and its occurrence was "a rare complication of the surgeries."

## II. DISCUSSION

The construction and the legal effect of these policies are governed by Arkansas law. Smith v. Prudential Prop. & Cas. Ins. Co., 10 S.W.3d 846, 850 (Ark. 2000) ("The construction and legal effect of written contracts are matters to be determined by the court, . . . *except* when the meaning of the language depends upon disputed extrinsic evidence.") (quoting Southall v. Farm Bureau Mut. Ins. Co., 632 S.W.2d 420, 421 (Ark. 1982)). We review de novo the district court's interpretation of state law. Columbia Ins. Co. v. Baker, 108 F.3d 148, 149 (8th Cir. 1997). The parties stipulated to the facts as well as to the contract definitions of "injury" and "sickness." The parties also agreed to the judicial construction of "accidental" as "something happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected." Duvall, 748 S.W.2d at 652 (citations omitted).

What the parties dispute is the proper application of the contract definitions and the judicial construction to the facts. Paul Revere argues Dr. Kolb knowingly consented in May 1995 to two elective surgical procedures on his right eye after being fully informed by his surgeons of possible surgical complications, including loss of vision. Known surgical complications arising from voluntary surgical procedures, Paul Revere contends, do not constitute accidental bodily injury within

the meaning of the policies. Conversely, Dr. Kolb argues his complications, resulting in total disability, constituted an "injury," not "sickness."

On the morning following his eye surgeries, Dr. Kolb was without sight in his right eye. Dr. David Bradford (Dr. Bradford), who performed the second procedure (vitrectomy), testified Dr. Kolb had a "hyphema," which Dr. Bradford described as "blood up in the front of the eye, he had low pressure in his eye, and he had what is called a hemorrhagic choroidal detachment, by ultrasound." Explaining the possible causes of the hyphema, Dr. Bradford testified:

> Now, eyes can just have those things happen after surgery, and really have no reason for it. It could be because he coughed after surgery and had coughed hard enough that it induced a hemorrhage. You can have these things just spontaneously occur and have no good reason for it. It just happens. It happened–it is a very rare problem outside of the operating room.

Neither surgeon who operated on Dr. Kolb knew or could identify the cause or causes of Dr. Kolb's complications. Dr. Richard Harper (Dr. Harper), who performed the earlier aborted lens repositioning procedure, testified the complications Dr. Kolb experienced, including low eye pressure, hemorrhaging, choroidal effusions, and retinal detachment, were known risks associated with both surgical procedures. Although Dr. Harper could testify with medical certainty that Dr. Kolb sustained known complications of surgery, Dr. Harper could not determine which surgical procedure caused the complications.

Dr. Bradford, who performed the vitrectomy, testified Dr. Kolb did not exhibit hemorrhaging or other complications during the second procedure. Dr. Bradford's operative summary reflects the surgical wound made during the first surgery to the front of Dr. Kolb's eye was closed and not leaking when Dr. Bradford completed the second surgery. Based on his operative summary, Dr. Bradford concluded "something

happened overnight that caused that wound to start leaking." However, Dr. Bradford did not know what caused the hemorrhaging in Dr. Kolb's right eye and was unable to determine whether the hemorrhaging caused the low pressure which, in turn, caused the wound leaking, or whether the wound leaked first, causing low pressure in Dr. Kolb's right eye, and in turn, causing the hemorrhaging. Dr. Bradford concluded, based on what he saw the morning following surgery, "there is no way of knowing what started it." Dr. Bradford agreed with deposing counsel's depiction of causation as a "chicken and egg thing."

The Arkansas courts have not ruled on the issue of whether complications arising from surgical procedures constitute an "accident" in life or disability policies. The district court's conclusion that Dr. Kolb sustained accidental bodily injury entitling him to judgment is consistent with Arkansas precedent. Although Dr. Kolb was fully informed of the potential risks associated with the eye surgeries, we are convinced the average person would regard this occurrence of rare complications as accidental. Landress, 291 U.S. at 499 (Cardozo, J., dissenting). Dr. Kolb's vision loss was not expected,[4] proceeded from an unidentified cause, and occurred only by chance. Unlike the decedent in Duvall who died from Marfan's syndrome, some unknown, unidentifiable cause "out of the ordinary [] intervened" resulting in Dr. Kolb's loss of vision. Duvall, 748 S.W.2d at 653. Therefore, we agree with the district court that Dr. Kolb's loss of vision constituted "accidental bodily injury" under both policies.

Our conclusion is reinforced by two findings. First, Paul Revere failed to persuade the district court, and fails to persuade us, that these facts, as applied to the

_____

[4]At the risk of descending into the Serbonian Bog (see footnote 3, supra), we present this analogy: The average person traveling by automobile, airplane, boat, or train recognizes personal injury is a risk of transportation. If personal injury does occur, the average person would still reasonably say the injury was unexpected and occurred as the result of an accident.

"plain and ordinary" meanings of "sickness," "disease," and "accidental bodily injury," establish Dr. Kolb is totally disabled as a result of some sickness or disease, rather than as a result of an accidental bodily injury. Dr. Kolb did not have surgery necessitated by any particular sickness or disease, and the surgeons could not identify any known sickness, disease, or other similar condition which might have caused the hemorrhaging.

Second, the policies contain no specific medical or surgical treatment exclusion for known risks or complications of surgery. An insurer may reasonably limit or restrict policy coverage. Indeed, Paul Revere expressly limited coverage for total disability resulting from either cosmetic or transplant surgery, deeming such total disability to have resulted from "sickness." Had Paul Revere intended to exclude all surgical complications from "injury" coverage, Paul Revere could have restricted coverage by including a medical or surgical treatment exclusion in its policies, thereby providing insureds with clear notice of the exclusion.[5]

Under Arkansas law, "[a]n insurance policy is to be construed strictly against the insurer, who chooses its language," Southall, 632 S.W.2d at 421, "and if a reasonable construction may be given to the contract which would justify recovery, it would be the duty of the court to do so." Smith, 10 S.W.2d at 850. We believe this judicial directive requires us to affirm the judgment below.[6]

---

[5]"Generally, accident policies should be so interpreted that provisions of the policies effectuate the reasonable expectations of the purchaser. An average person buying a personal accident policy assumes he is covered for any fortuitous and undesigned injury." 1A J. Appleman & J. Appleman, Insurance Law and Practice § 360 (1981).

[6]Reasonable jurists can and do disagree whether injury or death incurred as a result of medical or surgical complications can be construed as "accidental" in life and disability policies. See Senkier v. Hartford Life & Acc. Ins. Co., 948 F.2d 1050, 1053 (7th Cir. 1991) (declaring "[m]edical treatment is often risky and when the risk

-7-

## III. CONCLUSION

Guided by (1) the plain and ordinary meaning of "accidental" as construed by the Arkansas Supreme Court; (2) the specific facts of this case, including the unknown cause of Dr. Kolb's rare, post-surgery complications; (3) the absence of a medical or surgical treatment clause in the policies excluding or restricting such coverage; and (4) the reasonable expectations of the average purchaser of disability insurance, we affirm the well reasoned opinion and judgment of the district court.

_____

---

materializes and the patient dies we do not call it dying in or because of an accident; it is death from sickness"). We also recognize our decision today is not necessarily in accord with decisions from other jurisdictions. See, e.g., Penn. Life Ins. Co. v. Aron, 739 So.2d 1171, 1171 (Fla. Dist. Ct. App. 1999) (holding "occurrence of a known surgical complication, in the absence of a medical mishap, cannot be deemed an accident for purposes of the policy."); Bathony v. Transamerica Occidental Life Ins. Co., 795 F. Supp. 296, 300 (D. Alaska 1992) (ruling "when one undertakes an activity in which there is a substantial risk and is aware of that risk and, if that result occurs, it cannot be called an accident") (citing INA Life Ins. Co. v. Brundin, 533 P.2d 236 (Alaska 1975)).