Jenny CRISLER  *v.*
UNUM LIFE INSURANCE COMPANY of America

05-919                                    233 S.W.3d 658

Supreme Court of Arkansas
Opinion delivered April 13, 2006

*Law Offices of Henry Law Firm, PLC,* by: *Troy Henry,* for appellant.

*Watts, Donovan & Tilley, P.A.,* by: *David M. Donovan* and *Christine Connelly Althoff,* for appellee.

BETTY C. DICKEY, Justice. Jenny Crisler appeals the order of the Craighead County Circuit Court granting a motion for summary judgment by appellee, Unum Life Insurance Company of America (hereafter "Unum"). The trial court ruled that Missouri had the most significant relationship to the insurance contract at issue in this case, therefore Missouri law applied, and that under Missouri law the decedent's death was not an "accidental bodily injury." We reverse and remand with the instruction to apply Arkansas law to the contract at issue here, and for further action in accordance with this opinion. Jurisdiction in this case is pursuant to Ark. Sup. Ct. R. 1-2(b)(2) and (5).

Crisler is the beneficiary of two life insurance policies that were owned by the decedent, Mary Brown. On June 20, 2003, Brown, a Jonesboro resident, visited her doctor for treatment of

flu-like symptoms. The doctor injected Brown with Rocephin, an antibiotic with which she had been treated without incident on at least two previous occasions. As a result of this injection, Brown suffered an anaphylactic reaction, lapsed into a coma, and died on July 9, 2003.

The two life insurance policies, policy numbers GSR 19971 and GSR 24245, were issued by Unum, a Maine corporation, to Upper Northwest Financial Services Association (hereafter "Upper Northwest"), based in Missouri. Policy number GSR 24245 was nonsuited and is not at issue in this appeal. Aurora Loan Services (hereafter "Aurora"), based in Minneapolis, Minnesota, a member of Upper Northwest, was a mortgage lender to Brown. In conjunction with her mortgage on her home in Jonesboro, Mary Brown received a certificate of life insurance from Aurora which referenced policy number GSR 19971 and provided for "accidental death benefits" in the amount of $50,000. The application for this insurance was mailed to Brown in Jonesboro, and the certificate evidencing her ownership of the policy was also delivered there. The monthly payments were mailed to Aurora along with her mortgage payments.

### Choice-of-Law Issue

The appellants first point on appeal is: *The trial court erred in finding that the State of Missouri, rather than the State of Arkansas, had the most significant relationship to the insurance contract and erred in applying Missouri law.*

As a threshold matter, it is necessary to determine which contract should be analyzed under the applicable choice-of-law rules. The appellee contends that it is the contract between Unum and Upper Northwest, while the appellant argues that it is the contract between Mary Brown and Aurora.

In this case Unum issued policy number GSR 19971 to Upper Northwest in 1997, and in 2002 Mary Brown received a certificate of insurance, which referenced the policy, from Aurora, a member of Upper Northwest. In *Metropolitan Life Insurance Co. v. Harper*, 189 Ark. 170, 70 S.W.2d 1042 (1934), a New York insurance company issued a group insurance policy to a New York corporation, which eventually caused an insurance certificate referencing the policy to be delivered to Harper in Arkansas. There, we held that because the certificate was delivered in Arkansas, and did not become effective until delivered, Arkansas

law applied. Additionally, Professor Robert A. Leflar, perhaps the leading American authority on the conflict of laws, stated the following in his *American Conflicts Law*:

> When a master policy of group insurance is issued, there are at least two contracts. The group policy is one contract, and is usually said to be governed by the law of the place where it was delivered. The contract as to each individual within the group is separate.

Robert A. Leflar *et al.*, *American Conflicts Law* § 153, at 434 (4th ed. 1986).

Here, the application for the policy was mailed to Brown in Arkansas, and the certificate indicating her ownership of the policy was delivered to her in Arkansas. Based on the foregoing, we conclude that this contract is between Mary Brown and Aurora, and that it incorporates the terms found in GSR 19971.

In conflict-of-law disputes for causes of action arising in contract, this court applies the law of the state with the most significant relationship to the issue at hand. *Ducharme v. Ducharme*, 316 Ark. 482, 872 S.W.2d 392 (1994). In cases not involving an effective choice of law by the parties, the following factors are relevant to the determination of which state has the most significant relationship to a particular case: 1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; 5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Restatement (Second) Conflict of Laws* § 188 (1971).

Applying these principles to the case at hand, we first look to see if there has been an effective choice of law. The appellee argues that policy number GSR 24245, which was non-suited, expressly provided for the application of Missouri law. That policy stated in part, "This policy is delivered in and is governed by the laws of the governing jurisdiction . . . ." Appellee does not contend that policy number GSR 19971, at issue here, expressly provides for the application of Missouri law, but nevertheless attempts to bootstrap the choice-of-law clause in GSR 24245 onto that policy. Appellee asserts that GSR 19971 "effectively" provides that Missouri law applies, though it fails to specify which clause makes that provision. The most likely clause, titled "Conformity with state statutes," states, "On the effective date of this

policy, if any provision conflicts with the laws of the state in which this policy is delivered, it shall be deemed to conform to the law." We find this language to be ambiguous. No specific state is mentioned, and a reasonable construction of this provision is simply that any illegal provisions are void to the extent that they deviate from the law of the state in which the policy is delivered. Additionally, in a section titled "Legal Actions," the policy states, "No such action may be brought after three years (in Kansas five years; in South Carolina, six years) from the time written proof of loss must be given." Thus, the policy itself contemplates the application of state law other than that of Missouri. For the foregoing reasons, we find that there was no effective choice of law in this contract.

Because there was no effective choice of law, we apply the significant-relationship analysis. Here, Aurora mailed the insurance application to Brown in Arkansas, and Brown completed the application and mailed it back. Aurora then notified Brown that her application had been approved, and Brown proceeded to pay for the insurance. Aurora's notification to Brown that she had been approved for the insurance constituted an offer, and Brown's first payment constituted acceptance supported by consideration, and thus formed the contract.

Thus, the contract was made and negotiated partially in Arkansas and partially in Minnesota. It involved a policy written by Unum in Maine, delivered to Upper Northwest in Missouri, then sold by Aurora, a member of Upper Northwest and located in Minnesota, to Mary Brown in Arkansas. The location of the subject matter of the contract, Brown's life, existed in Arkansas. The performance of the contract, which in addition to Brown's payments to Aurora, was to be the payment of a stipulated sum to a designated beneficiary in the event of Brown's death under certain conditions, was mainly centered in Arkansas, because the payments to Aurora were sent from Arkansas, and the payments to the beneficiary, Crisler, were to be made in Arkansas. A purchaser of insurance in Brown's situation, where the offer to sell insurance was solicited and made in Arkansas to an Arkansas resident, would justifiably expect Arkansas law to apply. Based on the foregoing reasons, we conclude that Arkansas law has the most significant relationship to the transaction and parties in the present case, and

that it applies to the insurance contract at issue here. Accordingly, we reverse and remand the trial court's ruling that Missouri law was applicable in this case.

*Policy Exclusion Issue*

The appellant's second point on appeal is: *The trial court erred in finding that Mary Brown's death was not an "accidental bodily injury" and that the policy exclusion for illness or disease applied to death caused by anaphylactic shock resulting from an allergic reaction to a drug.*

The insurance policy at issue here is a contract. When the meaning of the language used in a particular contract does not depend upon disputed extrinsic evidence, its construction and effect are to be determined by the court as a question of law. *Arkansas Rock & Gravel Co. v. Chris-T-Emulsion Co.*, 259 Ark. 807, 536 S.W.2d 724 (1976). Here, there is no disputed extrinsic evidence upon which the meaning of the contract depends. Thus, we proceed to a review of the appellant's second point on appeal.

Policy number GSR 19971 states in pertinent part, "The loss must result directly and independently of all other causes from accidental bodily injury" and, under a section entitled "exclusions," the policy states that it will not pay for losses caused by "illness, disease, or bodily infirmity."

Mary Brown's death resulted from anaphylactic shock, which resulted from an injection of Rocephin, an antibiotic with which she had been previously injected without incident. The appellee relies on our holding in *Duvall v. Massachusetts Indemnity & Life Insurance Co.*, 295 Ark. 412, 748 S.W.2d 650 (1988), to support its argument that Brown's death was the result of a disease and not an accidental bodily injury. The decedent in *Duvall* collapsed and died while cutting wood. An autopsy determined that his death resulted from Marfan's Syndrome, a congenital heart disease. The policy in that case read, "The term "injury" as used in this policy shall mean accidental bodily injuries from which loss results directly and independently of all other causes . . . ." *Duvall*, 295 Ark at 415, 748 S.W.2d at 652. This is language very similar to the contested language in the present case.

In *Duvall*, we defined the terms "accident" or "accidental" as "something happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected." *Id.* We also noted that the term "bodily injury" usually indicated

injuries caused by external violence and not disease. *Id.* In that case we also heeded Justice Cardozo's advice in *Landress v. Phoenix Mutual Life Insurance Co.*, 291 U.S. 491 (1934), to avoid the "Serbonian Bog" of attempting to distinguish between accidental means and accidental results in insurance cases, and we make no such distinction. In deciding what events qualify as accidental, we endeavor to adopt the objective perspective of the average person who takes out a policy of accident insurance. *Duvall*, 295 Ark. at 419, 748 S.W.2d at 653.

During the second half of the last century, insurance companies, when defining coverage for accidental loss, began to employ the more liberal terms "accidental bodily injury" as opposed to the "accidental means" language which was in general use in the early part of the twentieth century. William Eckert, *Sickness and Accident Insurance*, 11 Ark. L. Rev. 1 (1957). Some courts construed "accidental means" to allow recovery only when the means which led to an injury were accidental in themselves, while some courts allowed recovery if the result was accidental, even if the means were not. 1A J. APPLEMAN & J. APPLEMAN, *Insurance Law and Practice* 360 (1981). To illustrate, in the present case, the means which brought about the anaphylactic reaction was an injection of an antibiotic, intentionally administered, and thus it was not accidental. However, the result of that injection, an anaphylactic reaction, was accidental. We have declined to participate in this pedantic practice, and we make no distinction between accidental means and accidental results, but instead adhere to the definition of "accidental" listed above, in an attempt to make our definition comprehensible, accessible, and therefore useful to the ordinary person, in this case, the ordinary person who purchases life insurance.

█ Applying these principles to the present case, Mary Brown's death qualifies as something "happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected," as judged from the objective perspective of the average purchaser of insurance. It resulted from the introduction of an external substance, Rocephin, into her circulatory system. The statistical probability of death as a result of such an injection is very low, and it is an unexpected occurrence very much outside the usual course of things.

The policy also explicitly excludes deaths caused by "bodily infirmity" or "disease" from its coverage. Our holding in *Duvall* assumes that deaths resulting from disease are not the result of

"accidental bodily injury." In *Duvall*, we stated, "In this case there was a disease and nothing out of the ordinary that intervened to cause Duvall's death. It is undisputed that Duvall, while engaged in his regular employment, died from Marfan's Syndrome, a disease; therefore his death was not accidental under the policy." *Duvall*, 295 Ark. at 419, 748 S.W.2d at 653. Thus, if the appellee is correct in its contention that an anaphylactic reaction to an injection of an antibiotic is a disease, then Brown's death is not covered under the policy as either an accidental bodily injury or as a disease.

The appellee cites no legal authority to support its argument that an allergic reaction qualifies as a disease, but does state that it is considered a disease by medical science. The appellant offers affidavits by two physicians stating it is not a disease, as well as a citation to J. A. Bryant, Jr., Annotation, *What Conditions Constitute "Disease" Within Terms of Life, Accident, Disability, or Hospitalization Insurance Policy* 61 A.L.R.3d 822 (1975), which states that hypersensitivity to a drug does not constitute a disease.

Additionally, 46 C.J.S. *Insurance* § 884 (2006), states:

> The words "bodily infirmity or disease," as used in a provision exempting the insurance company from liability for injuries caused thereby, refer only to an ailment or disease of a settled character, or one so considerable or significant that it would be characterized as such in the common speech of men, or some physical disturbance to which insured is subject, and of which the attack which caused his injury is in some measure a recurrence.

> They do not include a mere temporary infirmity or weakness, or a wound or hurt producing an injury and immediate functional disturbance, or normal physical changes that inevitably accompany advancing years, or insanity; nor do they extend to or include accidental injuries.

We have held that insurance policies are to be strictly construed against the insurer, who chooses the language. *Southall v. Farm Bureau Mut. Ins. Co.*, 276 Ark. 58, 632 S.W.2d 420 (1982). Also, we have stated, "if a reasonable construction may be given to the contract which would justify recovery, it would be the duty of the court to do so." *Smith v. Prudential Prop. Cas. Ins. Co.*, 340 Ark. 335, 10 S.W.3d 846 (2000). It would be anomalous and inconsistent for us to adopt the perspective of the average purchaser of

insurance when defining "accidental bodily injury" and to then apply a hypertechnical definition of "disease" or "bodily infirmity" when the terms are used in the same policy. We do not think that the average purchaser of insurance would consider an allergic reaction to an antibiotic to be a disease or bodily infirmity, and using a strict construction as we are required to do by our precedent, we conclude that for the purposes of insurance policies, it is not. If an insurance company wishes to exclude allergic reactions to drugs from coverage under a particular policy, it may do so by the use of specific language, but it cannot accomplish this result by the use of the terms "disease" or "bodily infirmity." We reverse the decision of the trial court granting summary judgment, and remand with the instruction to apply Arkansas law to the insurance contract between Aurora and Mary Brown, and for further proceedings.

Reversed and remanded.

GLAZE, J., not participating.