Benny HAWKINS and Claudia Hawkins *v.* HERITAGE LIFE
INSURANCE COMPANY

CA 96-968                                946 S.W.2d 185

Court of Appeals of Arkansas
Division IV
Opinion delivered May 14, 1997

*Ponder & Jarboe*, by: *Dick Jarboe*, for appellant.

*Wood & Lockhart, PLC*, by: *W. Kirby Lockhart*, for appellees.

TERRY CRABTREE, Judge. This case presents a question regarding insurance coverage. The appellants are the parents of the late Dwayne Hawkins. On November 4, 1988, Dwayne collapsed while playing in a Pocahontas High School football game. He was hospitalized and died thirty-nine days later without ever regaining full consciousness. During the period of his hospitalization, Dwayne was insured under an accident policy issued to the Pocahontas School District by the appellee, Heritage Life Insurance Company. The appellants filed a claim with Heritage, seeking benefits for medical expenses incurred during their son's hospitalization. Heritage denied the claim on the grounds that Dwayne's death was not "accident-related." As a result of that denial, the appellants filed suit against Heritage, seeking the maximum amount of medical expense benefits payable under the policy, plus a twelve percent penalty, interest, and attorney's fees. Heritage filed a motion for summary judgment, which was granted by the trial court. We reverse and remand for trial.

The standard of review in summary judgment cases is well-established. Summary judgment is an extreme remedy which should only be allowed when it is clear that there is no genuine issue of material fact to be litigated. *Johnson v. Stuckey & Speer, Inc.*, 11 Ark. App. 33, 35, 665 S.W.2d 904 (1984). The burden of sustaining a motion for summary judgment is on the moving party. *Moeller v. Theis Realty, Inc.*, 13 Ark. App. 266, 269-70, 683 S.W.2d 239 (1985). On appeal, we must view the evidence in the light most favorable to the non-moving party. *Undem v. First Nat'l Bank*, 46 Ark. App. 158, 162, 879 S.W.2d 451 (1994). It is our task to decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Johnson v. Harrywell, Inc.*, 47 Ark. App. 61,

63, 885 S.W.2d 25 (1994). With these criteria in mind, we undertake our review of the following facts, as revealed by the attachments to the appellee's motion for summary judgment and the appellants' response thereto.

At the time of his death, Dwayne Hawkins was an eighteen-year-old high school senior and a member of the Pocahontas High School football team. His medical history discloses that, during his sophomore and junior years of high school, he experienced two syncopal episodes, one during a track meet and one while he was lifting weights. The episodes were diagnosed, possibly incorrectly, as seizures. Dwayne was prescribed Dilantin and was told to take it every day. There is no evidence of a history of any other medical problems.

During the week before the November 4, 1988, football game, Dwayne had been ill with the flu, yet he recovered in time to dress out for the game. He did not start the game because, according to his father, he had suffered bruised ribs in a game two weeks earlier. However, he eventually entered the game and, according to Mr. Hawkins, was involved in several plays where he encountered physical contact. Mr. Hawkins recalls that Dwayne was participating on punt coverage and ran full speed down the field for over forty yards. At some point, Dwayne was sent into the game as a punter. After kicking the ball, he took a few steps and collapsed on the field.

Mr. Hawkins's account of these events is disputed. According to Coach David Williams, Dwayne was not allowed to start the November 4 football game because he had missed practice earlier in the week. In Coach Williams's affidavit, he states that he is positive that Dwayne was only in the football game for the one play during which he punted the ball and collapsed on the field. He further stated that he did not see Dwayne receive any contact during the play, nor did anyone ever tell him that they saw Dwayne get hit.

After his collapse, Dwayne was taken to the emergency room of the Randolph County Medical Center. The emergency room physician noted that the initiating factor behind Dwayne's collapse could not definitely be determined at that point. Dwayne was

stabilized and transferred to St. Bernard's Regional Medical Center in Jonesboro. The admission report noted that Dwayne had been participating in a high school football game, at which time he experienced a syncopal episode. The report stated that "[h]e received no apparent contact and was simply seen to take a few steps and collapse." The initial assessment of Dwayne's condition was probable hypoxic encephalopathy with the initiating event still uncertain. The possibilities listed included cardiac arrhythmia, seizure disorder, cardiac arrest secondary to bronchospasm, and asthma.

The day following Dwayne's admission to St. Bernard's, a cardiology consultation was performed by Dr. Michael Isaacson. According to Dr. Isaacson's report, "[n]o obvious contact such as bodily injury was noted prior to this collapse." The report further noted that Dwayne had failed to take his Dilantin for the last forty-eight preceding his collapse. Dr. Isaacson suspected sudden cardiac death as the initial explanation for the collapse rather than seizure activity.

Dwayne remained hospitalized until his death on December 13, 1988. The death summary prepared by the hospital declared that it was likely that the event which initiated Dwayne's collapse was ventricular dysrhythmia. The official discharge diagnosis was (1) acute hypoxic encephalopathy secondary to cardiopulmonary arrest; (2) pansinusitis; (3) recurrent ventricular arrhythmia. However, it was noted that the diagnosis could not be made with certainty.

Shortly after Dwayne's collapse and hospitalization, the appellants had submitted a claim to Heritage Life Insurance Company on an accident claim form. Under the portion of the form which asked the claimant to detail how the injury occurred, the following language appeared: "Heart failure and respiratory arrest (no contact)." The claim form was signed by Benny Hawkins on November 7, 1988.

On April 3, 1989, Heritage Life Insurance Company denied the appellants' claim for benefits. The denial was based on the fact that the policy provided medical expense benefits only if the insured received treatment because of an "injury." The term

"injury" was defined in the policy as "[b]odily injury or injuries resulting directly and independently of all other causes from an accident sustained while the Policy is in force as to the Insured Person and which results in loss covered by the Policy."

Four and one-half years after the denial of their claim, Mr. and Mrs. Hawkins filed the lawsuit which is the subject of this appeal. During the course of the lawsuit, the deposition of Benny Hawkins was taken. Mr. Hawkins testified that he remembered Dwayne being in the game for at least two plays other than the play on which he collapsed. He said that he saw Dwayne get hit on at least one of the downs. He also said that he had looked at a videotape of the game and that the tape confirmed his recollection. However, upon viewing the tape with the appellee's attorneys, he admitted that the tape did not clearly show Dwayne's participation in more than one play.[1]

Mr. Hawkins also stated in his deposition that he had once contacted Dr. Isaacson for an opinion on whether physical contact could have contributed to Dwayne's collapse. On July 26, 1991, Dr. Isaacson responded with a letter which contained the following language: "This letter is in regard to our recent telephone conversation of 7-26-91. At the present time, I suppose that prior physical contact could have, in some form or fashion, contributed to your son's collapse but again, these are only speculations on my behalf."

Dr. Isaacson's deposition was also taken during the course of the litigation. The doctor admitted that he did not know exactly what triggered Dwayne's collapse. His best guess was that Dwayne had experienced a cardiac arrest probably as a result of dysrhythmia, which caused a loss of oxygen to the brain. When asked about the possibility that physical contact or strenuous activity could have contributed to Dwayne's death, the doctor said the following:

---

[1] The appellants state in their brief that the videotape clearly reflects that Dwayne had participated in a play previous to punting the football. Nothing in the record indicates that the tape was presented to the trial court as an exhibit. Neither has the videotape been furnished to this court on appeal. Therefore, we will not consider it as evidence on behalf of the appellants.

Q. At this point, I don't know that anyone has seen anything on the films that would show that he was involved in any sort of physical contact, but if the testimony, when this case is tried, produces some testimony that he was involved in physical contact and assuming that he had some underlying cardiac condition, could that have contributed to the arrest?

A. The possibility that it could have contributed I think has to be considered. I would expect it to be significant contact and contact involving the chest before you would really say that it could possibly had [sic] any contribution.

Q. What about running as hard as you can run, say, for 50 yards or so?

A. Hard strenuous activity could have also aggravated an underlying cardiac condition.

All of the above-mentioned evidence was relied upon by Heritage in submitting its motion for summary judgment to the court. The same evidence was relied upon by the appellants. Additionally, Mr. Hawkins provided the court with an affidavit in which he reiterated that his son had engaged in strenuous activity and exertion in kicking the football and had been involved in several plays during the game in which he experienced physical contact. Based upon these exhibits, the court ruled that the appellants failed to demonstrate a compensable "injury" as defined by the policy. The court also found that the appellants failed to establish that a sudden burst of physical activity or contact proximately caused Dwayne's collapse. It is from that ruling that Mr. and Mrs. Hawkins appeal.

■ Our supreme court has noted that Arkansas courts, as well as courts throughout the land, have faced difficulty in determining what is an "accidental" death or injury. *See Duvall v. Massachusetts Indemnity and Life Ins. Co.*, 295 Ark. 412, 414, 748 S.W.2d 650 (1988). Our courts have adopted the generally accepted definition of "accident" as something "happening by chance, taking place unexpectedly, not according to the usual course of things. *Hartford Life Ins. Co. v. Catterson*, 247 Ark. 263, 265, 445 S.W.2d 109 (1969). The Arkansas Supreme Court has held that, where an injury following overexertion or strain is unforeseen or unexpected and is not such as would naturally and probably result from a voluntary act done, but is rather an unusual

result, such injury is accidental. *Union Life Ins. Co. v. Epperson*, 221 Ark. 522, 524, 254 S.W.2d 311 (1953); *Metropolitan Casualty Ins. Co. v. Fairchild*, 215 Ark. 416, 418-20, 220 S.W.2d 803 (1949). However, in *Duvall*, the most recent case on this subject, the court recognized that not every death that is sudden or unexpected is accidental. The court also noted that the words "bodily injury" are commonly and ordinarily used to designate an injury caused by external violence, and not to indicate disease. *See Duvall, supra*, at 415-16.

In this case, unlike *Duvall*, the cause of the decedent's death is uncertain and disputed. Causation is ordinarily a fact question for the jury to decide. *First Commercial Trust Co. v. Rank*, 323 Ark. 390, 402, 915 S.W.2d 262 (1996). The testimony of Mr. Hawkins and the testimony of Dr. Isaacson are sufficient to raise material questions of fact regarding the factors which contributed to Dwayne's death. We therefore reverse and remand for trial.

Reversed and remanded.

GRIFFEN and ROAF, JJ., agree.