Ellen RICHISON, Executrix of the Estate of Stanley R. Richison, Deceased *v.* BOATMEN'S ARKANSAS, INC., and Consumer Protective Life Insurance Co.

CA 98-418                                    981 S.W.2d 112

Court of Appeals of Arkansas
Division III
Opinion delivered December 16, 1998

[Petition for rehearing denied January 20, 1999.]

272

*Roy Danuser* and *Sandy S. McMath & Associates, P.A.*, by: *Sandy S. McMath*, for appellant.

*Huckaba Law Firm, P.A.*, by: *Frank J. Huckaba*; and *Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Marshall S. Ney* and *Mark N. Halbert*, for appellees.

A NDREE LAYTON ROAF, Judge. This is an insurance case involving the tort of bad faith. Appellant, Ellen Richison, executrix of the estate of Stanley Richison, deceased, sued appellees, Boatmen's Bank of Arkansas, Inc. (Boatmen's Bank) and Consumer's Protective Life Insurance Company (Consumer's) for breach of contract and bad faith for denying payment of a $2500 credit life insurance policy issued to her late husband. Mrs. Richison appeals from the trial court's grant of partial summary judgment to appellees, dismissing her bad-faith claim and her request for punitive damages. On appeal, she contends that the trial court erred in granting summary judgment because 1) there was evidence that Consumer's engaged in the unethical practice of post-claim underwriting and arbitrarily and without guidelines denied the claim; 2) Consumer's failed to present evidence that her husband's alleged misrepresentation about his health was material to either the risk or to the hazard assumed; 3) there was no proof that her husband's asthma, if disclosed, would have been the basis for denying him coverage; and 4) the practice of post-claim underwriting is prima facie evidence of bad faith. For her fifth point, Mrs. Richison argues that the trial court erred in denying her motion for reconsideration because additional evidence from Consumer's 1993 annual report revealed disproportionately high earnings resulting from unethical claims practices. We find no merit to any of Mrs. Richison's points, and affirm.

Stanley Richison financed the $2500 purchase of a used pick-up truck on June 26, 1992, through Boatmen's Bank. The bank, acting as agent for Consumer's, issued Richison a credit life insurance policy insuring the amount of the debt throughout the finance period. Consumer's had trained the finance officer at Boatmen's Bank to complete the applications for the policies.

Although Richison was not asked details about his physical condition, the following statement appeared on the application form immediately above his signature: "I am now in good health, mentally and physically. I know of no physical impairment or disease now affecting my health." If an applicant disclosed a medical condition or problem at this point, an additional medical check list, inquiring about specific conditions, was to be completed and submitted with the application. Because Richison signed the "good health" statement and did not disclose that he was asthmatic, he was not asked to complete the additional questionnaire.

On July 30, 1993, approximately thirteen months later, Richison died as a result of a fatal asthmatic reaction to the drug Toradol, that was prescribed by his dentist during root canal treatments. Other than for periodic refills of his prescribed medications, Richison had not sought medical treatment for his asthmatic condition for over four years. Affidavits and deposed testimony from several witnesses established that Richison was not impaired by his asthmatic condition.

After Richison's death, Mrs. Richison made claim on the credit life insurance policy. Consumer's conducted an investigation and discovered that Richison's death certificate stated that the cause of his death was "hypoxia due to or as a consequence of asthma." Consumer's denied the claim on the ground that Richison had misrepresented his health on the insurance application. Consumer's further stated that had Richison indicated that he suffered from asthma, they would have denied coverage. Mrs. Richison filed suit against Consumer's and Boatmen's Bank, alleging breach of contract and bad faith in the denial of her claim. Consumer's moved for partial summary judgment on the claim of bad faith, asserting that Richison had failed to establish a prima facie case for the tort of bad faith. The trial court granted partial

summary judgment and dismissed the bad-faith claim and request for punitive damages. Mrs. Richison appeals from an Ark. R. Civ. P. 54(b) order dismissing this claim.

■ Summary judgment is an extreme remedy that should be allowed only when it is clear that there is no genuine issue of material fact to be litigated. *Hawkins v. Heritage Life Ins. Co.,* 57 Ark. App. 261, 946 S.W.2d 185 (1997). The burden of sustaining a motion for summary judgment is on the moving party. *Id.* On appeal, we view the evidence in the light most favorable to the nonmoving party, and decide if summary judgment is appropriate based on whether the evidentiary items by the moving party in support of the motion left a material question of fact unanswered. *Id.*

■ The elements for recovery under the tort of bad faith require the establishment of affirmative misconduct by an insurer, without a good-faith defense, which is dishonest, malicious, or oppressive in an attempt to avoid liability under a policy. *Southern Farm Bureau Casualty Ins. Co. v. Allen,* 326 Ark. 1023, 934 S.W.2d 527 (1996). A claim for bad faith cannot be based upon good-faith denial, offers to compromise a claim, or for other honest errors of judgment by the insurer. *Id.* Neither can the claim be based upon negligence or bad judgment so long as the insurer is acting in good faith. Actual malice means that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge; it may be inferred from conduct and surrounding circumstances. *Id.*

Three of Mrs. Richison's arguments on appeal relate to the alleged practice of "post-claim underwriting," a concept that has to date not been addressed by an Arkansas appellate court. Mrs. Richison contends that Consumer's engaged in post-claim under-writing, and that they arbitrarily and without guidelines denied her claim. She further contends that there was no evidence that Consumer's would have denied Richison's credit life coverage had Richison disclosed his asthmatic condition. Lastly, she argues that the practice of post-claim underwriting constitutes prima facie evidence of bad faith.

■    Although Mrs. Richison provides no authority for or even a definition of post–claim underwriting, the term is perhaps self–explanatory. Consumer's has cited two Mississippi cases which discuss the practice. In Mississippi, post–claim underwriting has been defined as "an insurer's waiting until after the insured makes a claim to determine whether the claimant is eligible for insurance according to the risk he presents." *Wesley v. Union National Life*, 917 F. Supp 232 (S.D. Miss. 1995)(citing *Lewis v. Equity Nat'l Life Ins. Co.*, 637 So.2d 183 (Miss. 1994)) Mrs. Richison argues in essence, that this is precisely what Consumer's did. She contends that Consumer's waited until after Richison died and claim had been made, then investigated his death and denied the claim based upon a condition for which it had no written policy providing for the exclusion of coverage and would not have denied coverage had the condition been disclosed. Mrs. Richison also contends that post–claim underwriting is considered an unethical practice in the insurance industry.

Mrs. Richison points out as evidence to support her arguments the deposition of Consumer's part-time underwriter, Jack Hewett, in which he testified that had determined from review of Richison's death certificate and medical records that Richison he suffered from asthma, that it led to his death, that he failed to disclose this preexisting illness on his insurance application, that had he done so, the policy would not have been issued, and that the claim should be denied on these grounds. Hewett further testified that he spent only thirty minutes reviewing the claim, that he based the denial on his personal opinion and experience without reference to the underwriting manuals he customarily used, that Consumer's had no written policy with regard to asthma, and that he did not know of any applications for insurance that had been denied by the company as a result of asthma. Hewett also acknowledged that post–claim underwriting was like "making a decision at the time whether the policy would have been or should have been issued in the first place," and that it is considered unethical by the insurance industry warranting disciplinary action.

Mrs. Richison also submits the affidavit of her expert, Dr. John O'Connell, a professor of insurance, who opined that asthma was not a condition which would have excluded Richison from

being issued a policy of credit life insurance with Consumer's, that Consumer's was engaging in post-claim underwriting as a corporate policy, and that Richison's failure to disclose that he had asthma did not constitute a misstatement with regard to his response to Consumer's "good health" question. In response, Consumer's denies that it engaged in post-claim underwriting and contends that by attesting to his good health on the initial application, Richison bypassed any further underwriting inquiry by Consumer's.

Of course, the issue of whether Mrs. Richison should prevail on the breach-of-contract action is not before us. The question to be resolved is whether she has provided evidence of affirmative acts committed by Consumer's that would constitute bad faith as defined by our appellate courts, whether the actions are labeled post-claim underwriting or not. A review of the cases addressing the issue of bad faith indicates that she has failed to meet this burden.

█  We conclude that the allegations that Consumer's failed to fully investigate the cause of Richison's death beyond a cursory review of the death certificate and medical records will not support a claim of bad faith. In *Findley v. Time Ins. Co.*, 264 Ark. 647, 573 S.W.2d 908 (1978), the insured alleged, among other things, that the insurer failed to contact her physician or to investigate fully the diagnosis by her treating physician before denying a claim for medical insurance benefits based on false statements on the application for the policy. The supreme court stated that "had [Findley] claimed that after the investigation by [the insurer] it was determined that claim was valid and [the insurer] nevertheless refused to pay or . . . refused to make any investigation at all, and that [the] refusals were in bad faith with an intent to cause further damage to [Findley] a different question would be presented." The court stated that Findley had not asserted any *affirmative* action on the part of the insurer that would constitute bad faith or fraud.

We also conclude our case law does not support a finding that, with regard to the Richison claim, Consumer's actions constituted bad faith. In *Employer's Equitable Life Ins. Co. v. Williams,*

282 Ark. 29, 665 S.W.2d 873 (1984), the court affirmed a jury verdict and an award of punitive damages for the tort of bad faith where the insurer altered insurance records so that it appeared that a policy on a bad risk had lapsed when it had not. The insurer further deceived the insured into signing a statement acknowledging that his premium payment was not timely received, under the guise of allowing the company to continue his coverage, and then canceled the coverage. In *Southern Farm Bureau Cas. Ins. v. Allen, supra,* the court again affirmed a jury verdict for punitive damages based on bad faith, finding that the jury could have concluded that, in two conversations with the insured, the company lied about coverage available under the insured's policy and actively concealed the coverage from him.

Here, Mrs. Richison has failed to submit evidence of or even allege any such affirmative acts of misconduct as were present in these cases. Although she takes issue with Consumer's reliance upon its application in denying her claim, and contends that its adjuster was acting in bad faith in basing the denial on an undisclosed asthmatic condition, the evidence she presented does not support her contention. Hewett testified that he based the denial on his expertise in the field of insurance underwriting and further stated that, while working for Consumer's, about ninety percent of his time was spent reviewing applications for insurance and only ten percent of his time was spent reviewing medical records after a claim was made. Moreover, the opinion of Mrs. Richison's expert that Consumer's was engaged in the "practice" of post-claim underwriting is conclusory at best and was based only upon review of the Richison claim.

Mrs. Richison also argues that it was impossible for Consumer's to have a good-faith defense for its denial because it presented no evidence that Richison's alleged misrepresentation was material either to the risk or to the hazard assumed. She correctly contends that, to be material, the misrepresentation must be causally related to the loss for recovery to be barred under Ark. Code Ann. § 23-79-107 (Repl. 1992) in dealing with misrepresentations, omissions, and incorrect statements in life and disability insurance applications. The short answer to this argument is that, while the questions of whether Richison's undisclosed asthma was

material to the acceptance of the risk by Consumer's and whether there was a causal relationship between the misrepresentation and the hazard resulting in the loss are disputed issues to be addressed in the breach-of-contract portion of her case, there is no dispute that Richison had an asthmatic condition that he failed to disclose, and that his condition contributed at least in part to his death. Consumer's actions in disputing this claim cannot be said to rise to the level of "affirmative acts of misconduct" as set forth in our case law. The only authorities cited by Richison in this argument, a concurring opinion in *Southern Farm Bureau Life Ins. Co. v. Cowger*, 295 Ark. 250, 748 S.W.2d 332 (1988), and *National Old Line Ins. Co. v. People*, 256 Ark. 137, 506 S.W.2d 128 (1974), *overruled by Southern Farm Bureau Life Ins. Co. v. Cowger, supra,* are cases in which the insured, like Richison, failed to disclose preexisting conditions in response to "good health" statements in the insurance application. However, both are simply breach-of-contract cases in which the only issue was whether the insured would recover on the policy; they contain no discussion of the tort of bad faith and are clearly inapplicable to the issue before us. Failure to cite convincing legal authority for a point on appeal will result in affirmance of that point. *Mills v. Crone*, 63 Ark. App. 67, 973 S.W.2d 823 (1998); *Morse v. Morse*, 60 Ark. App. 215, 916 S.W.2d 777 (1998).

■ Likewise, the argument that Consumer's failed to offer any credible evidence that it would have in good faith denied coverage to Richison if his condition had been disclosed cannot be dispositive of the issue of bad faith. Mrs. Richison points to the lack of a clear exclusionary policy or underwriting guidelines, the failure to include asthma in its medical questionnaire, and her assertion that asthma is no longer considered a basis for denial of coverage by the life insurance industry. She relies on *Old Republic Ins. Co. v. Alexander*, 245 Ark. 1029, 436 S.W.2d 829 (1969), another breach-of-contract case, involving denial of a claim based on misrepresentation in the application by the insured. In *Old Republic, supra,* the court upheld the chancellor's finding of coverage, and stated that "it is significant that [the company] produced no record of its own underwriting standards nor did it attempt to show general standards in the underwriting profession or insurance

trade by disinterested witnesses. It relied solely on the self-serving declaration of its underwriter." Again, Richison's reliance on this authority is clearly misplaced, because it pertains not to a claim for the tort of bad faith, but rather to a claim only for insurance benefits.

Finally, Mrs. Richison argues that the trial court erred in refusing to grant her motion for reconsideration in view of the additional evidence submitted by affidavit that accompanied her motion. In this affidavit, Richison provided expert opinion that Consumer's 1993 annual report reflected a disproportionate ratio of earnings to premiums and commissions collected, that Consumer's was engaged in the wide-spread practice of post-claim underwriting, and that "one can only assume" that the practice of post-claim underwriting has a substantial impact on revenues. The affidavit further stated, incorrectly, that Consumer's admitted that its standard operating procedure was for claims to be underwritten after they had been made.

First, this affidavit is duplicative of the opinion provided by Dr. O'Connell except with respect to the financial information provided. Moreover, in her motion, Richison merely asserts that she had obtained "new evidence previously unavailable in the form of an executive review and opinion concerning the defendant's year-end financial statement of 1993." She does not even contend on appeal that the new evidence was unavailable, cites no authority, and does not state why or how the trial court erred in denying the motion. Arkansas Rule of Civil Procedure 59(a)(7) provides that a new trial may be granted where there is newly discovered evidence material for the party applying, which he could not with reasonable diligence, have discovered and produced at the trial. *See also Roetzel v. Brown*, 321 Ark. 187, 900 S.W.2d 185 (1995). Richison died in July 1993, and the complaint was filed on July 28, 1995. Consumer's motion for partial summary judgment was filed on October 11, 1996. The trial court granted the motion by order entered January 24, 1997. Under these circumstances, we cannot say that the trial court abused its discretion in denying the motion. *Roetzel, supra*.

Affirmed.

JENNINGS and BIRD, JJ., agree.